### C. H. GIBSON ET AL. v. R. E. MORRIS ET AL.

Decided March 5, 1902.

**1.—Religious Societies—Legal Church Meeting—Question of Law.**

Where the action was a contest over church property between factions of a Baptist church, each claiming to be the regular organization, it was error for the charge to submit to the jury the question of whether a certain meeting was a legal conference of the church, as this was a question of law for the court.

**2.—Same—Majority Rule.**

Where, in such contest, no departure from the church doctrines is claimed and it is admitted that in Baptist churches the majority rule obtains, the pivotal point in the case is which faction had a majority of the members adhering to it.

**3.—Briefs—Failure to File in Time—Waiver.**

The failure of appellants to file their briefs in time is waived where counsel for appellees treat the briefs as properly filed and make no complaint until a few days before the submission of the cause.

Appeal from Shelby.   Tried below before Hon. Tom C. Davis.

*I. O. B. Richardson, D. A. Holm*   and *E. H. Carter,* for appellants.

*Blount & Garrison,* for appellees.

FLY, Associate Justice.—This suit was instituted by R. E. Morris and J. B. Bussey, A. D. Johns, C. E. Sanford, and J. M. Vawter, claiming to be the pastor and deacons of the First Baptist Church at Timpson, Texas, against C. H. Gibson, R. R. Farrar, Lem Herrin, Tom Reed, J. W. Reed, J. E. Hooper, and T. H. Postell, to restrain them from taking and entering the church building for the purpose of organizing a church. Afterwards the petition was amended, and it was alleged that R. E. Morris was the pastor and J. B. Bussey was a trustee, the other plaintiffs being deacons, and that they sued for themselves and in behalf of the church.   It was also alleged that the fellowship of the church had been regularly withdrawn from C. H. Gibson, who had been legally tried on charges against him.   That afterwards Gibson had apologized and had been duly restored to the full fellowship of the church.   After his restoration, it is alleged, Gibson denied that he had apologized, and the proceedings restoring him to fellowship were rescinded.   At a meeting following this last action the minutes were adopted, and then defendants began to create dissension among the brethren and organized themselves into a separate and independent body and withdrew fellowship from the church, and proclaiming themselves in open rebellion to the church styled themselves the First Baptist Church of Timpson, although they constituted a minority of said church.   It was also alleged "that under the rules and regulations governing the First Baptist Church, that it was a body where the majority rules."

It is unnecessary to go into the details of the controversy, which to an impartial observer would seem trivial and of little consequence compared with the grand objects for which ecclesiastical bodies are organized, for the only matters with which the courts can concern themselves are the rights of property involved.   And as said by the Supreme Court of the United States in Watson v. Jones, 13 Wallace, 679: "Much as such dissensions among the members of a religious society should be regretted, a regret which is increased when passing from the control of the judicial and legislative bodies of the entire organization to which the society belongs, an appeal is made to the secular authority; the courts when so called on must perform their functions as in other cases."

Out of dissatisfaction with the pastor of the church, and the expulsion of C. H. Gibson for failure to attend the services of the church, and especially a union service, and for remarks made by him about other

members, the trouble arose among the members, culminating in a meeting in which the pastor as moderator presided, and after he had declared the meeting adjourned, the Gibson adherents, claiming a majority, organized another conference and proceeded to express their disapproval of the acts of the Morris wing. This was on May 2, 1901, and a meeting was called for May 8 by the Gibson adherents, before which time action had been taken by the other faction, and the meeting was not permitted to be held in the Baptist Church. The contest is as to which of the factions constitutes the First Baptist Church at Timpson. It was admitted in the pleadings of both parties that each Baptist Church is sovereign and independent and governed by its own laws, usages, and customs, and that each is an organization in which the majority rules.

The rule of the majority in the Baptist Church being an uncontroverted and an admitted fact, and it appearing that the church was not an incorporated body, the pivotal point in the case was as to which branch or wing had a majority of the members of the church adhering to it. The trial court, however, ignored this vital issue and submitted only the following issue:

"Was the meeting held at the First Baptist Church on the 2d day of May, 1901, presided over by R. R. Farrar, moderator pro tem. (after the conference presided over by Morris had adjourned), a legally called and legally held conference of the First Baptist Church of Timpson, Texas, the action of which would be binding upon the church."

The issue submitted was not one of fact, but of law, to be determined by the court on facts found by the jury. It was an issue that a jury could not determine, but involved the evolution of a legal decision by the jury from all the facts heard by them. In fact in the matter in the charge, preceding the issue itself, the jury were instructed to consider the evidence of the manner of calling the meeting and the evidence as to the rules and regulations of the Baptist Church in calling conferences. An instruction containing the vital issues in the case was asked and refused.

In the case of Watson v. Jones, above cited, which has met the approval of the Supreme Court of Texas in Baptist Church v. Fort, 54 Southwestern Reporter, 892, the different ecclesiastical bodies were divided into three classes, the one to which the church in this case would belong being as follows: "The second is when the property is held by a religious congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority?" Discussing this class the court said: "In such cases, where there is a schism which leads to a separation into distinct and conflicting bodies, the rights of such bodies to the use of the property must be determined by the ordinary principles which govern voluntary associations. If the principle of government in such cases is that the majority rules, then the numerical majority of members must

control the right to the use of the property. If there be within the congregation officers in whom are vested the powers of such control, then those who adhere to the acknowledged organism by which the body is governed are entitled to the use of the property. The minority in choosing to separate themselves into a distinct body, and refusing to recognize the authority of the governing body, can claim no right in the property from the fact that they had once been members of the church organization."

There was no allegation or proof that either wing of the church had departed from the fundamental doctrines of the Baptist organization, and that question can have no bearing upon the proper disposition of this case. There was no attempt to change the doctrines of the church or to organize a church of a different order and faith. The contest is one between Baptists, and the majority rule being shown to be the Baptist rule, the majority should govern. The other assignments of error are not well taken. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

The motion to strike out the briefs of appellant was overruled because appellees had by their acts waived the failure to file them in time, and because no possible injury could have been inflicted upon appellees by such failure. On February 10, 1902, counsel for appellee sent to counsel for appellants an agreement to allow the former to withdraw the transcript for the purpose of briefing the case, in which it was agreed that briefs might be filed by appellants at any time. This agreement was signed by counsel for appellants and returned to counsel for appellees, who did not sign the paper they had written and to which they had procured the signatures of their opponents, but filed a motion to strike out the briefs of appellants. That motion was filed on February 15, 1902, only a few days before submission of the case. No complaint was made up to that hour as to the briefs of appellant not having been filed in time, but on the other hand they had been treated as though properly filed. The objection came too late. It is true that they contend that they did not have time to brief the case, but the fact remains that they did brief it, and that they knew of the filing of appellant's briefs at least twenty days before the time the cause was set down for submission, and no complaint was made as to a lack of time in which to brief the cause.

There is no merit in the other questions presented by the motion for rehearing, and it is overruled.

*Overruled.*