## C. H. GIPSON ET AL. v. R. E. MORRIS ET AL.

### Decided October 19, 1904.

**1.—Charge—Stating Case.**

It was not error for the court in stating in his charge the matters in dispute to mention the names of some of the plaintiffs and defendants without mentioning them all, the pleadings and facts showing that the dispute was one between two factions of a church of which the parties named were leaders.

**2.—Death of Party to Suit—Dismissal.**

In an action between the factions of a church, each with their respective representatives, to restrain interference with possession and control of the church property it was not error for the court to enter a dismissal after the trial was ended as to one defendant who died while the case was pending, all the burdens imposed upon the deceased and the costs incurred by his joinder being assumed by plaintiffs.

**3.—Religious Society—Property Rights—Majority Rule—Charge.**

Whenever in an independent religious society having a congregational form of government a schism occurs at a regular meeting, the right to the use and possession of the church property depends upon which faction had a majority present and acting at the time of the schism, and a charge instructing a verdict for plaintiffs if a motion to adjourn such meeting was put and carried and no appeal taken from the decision of the presiding officer or division asked for, unless fraud on the part of the presiding officer in announcing the ayes in the majority appeared, held to properly present the issues involved, the evidence showing such method of adjournment to be in accordance with a set of rules adopted by the church to govern in parliamentary matters.

**4.—Church Property—Right to Control—Evidence.**

Where the question of the right to the use and control of church property depends upon which of two opposing factions had a majority at the meeting at which the dissension arose, testimony of a witness stating how many persons were present was admissible; but a list of all members belonging to the church who were allied with one faction but all of whom were not present at the meeting was inadmissible.

**5.—Assignment of Error—Bill of Exception.**

An assignment of error can not be sustained where the bill of exceptions upon which it is based fails to show the answer to the question to which objection is urged.

### ON MOTION FOR REHEARING.

**6.—Aye and Nay Vote—Declaration of Presiding Officer.**

Whenever a presiding officer declares the result of an aye and nay vote it will be held in the courts of the county as conclusive of the declaration of the body over which he is presiding, in the absence of a resort to the rules adopted or customarily used in setting aside such declarations.

Appeal from the District Court of Shelby. Tried below before Hon. Tom C. Davis.

*D. A. Holman, E. H. Carter,* and *Bryarly & McKnight,* for appellants.

*Blount & Garrison,* for appellees.

FLY, ASSOCIATE JUSTICE.—This is a third appeal of this case. 67 S. W. Rep., 433; 31 Texas Civ. App., 645; 73 S. W. Rep., 85. A full statement of the case is made in the former opinion of this court, first above cited, and need not be reiterated here.

36 Civ.—38

The facts justify the conclusion that the minority of the Timpson Baptist Church, led by appellants, after being outvoted on a church meeting, held on May 2, 1901, met and attempted to usurp the authority of the church and hold its property against the majority. The meeting of the minority was held immediately after the regular meeting had been adjourned by a majority of the members present. A division of the vote was not asked by the minority, nor was an appeal taken from the ruling of the presiding officer.

In stating the matters in dispute between the parties, the court, in the first paragraph of the charge, informed the jury that the suit was one "arising out of a schism in the First Baptist Church of Timpson, one party, the plaintiffs in this case consisting of R. E. Morris, Dr. J. B. Bussey and C. E. Sanford and the members of said church adhering to and acting with them; and the other parties, the defendants in this case, consisting of C. H. Gipson, L. Herrin, R. R. Farrar and those members of said church adhering to and acting with them." It is the contention of appellants that it was a grave error for the court to mention the names of a part of the plaintiffs and defendants and not those of all, but no effort is made to show how it could by any possibility have injured the cause of appellants, and the record does not reveal anything upon which might be hinged the hypothesis that appellants suffered any injury from the charge. The pleadings and the facts show that the church was divided into two factions led by the parties named and those associated with them, and when the jury found for the plaintiffs they found for the plaintiffs named in the petition, and the court was justified in rendering the judgment in favor of the plaintiffs named therein and against the defendants named therein. The authorities cited have no application to the facts of this case.

While the cause was pending R. R. Farrar, one of the defendants, died, but no suggestion of his death was made to the court until after the trial had ended, when appellees, on suggestion of his death in motion to set aside the verdict, entered a dismissal as to Farrar, and it is contended that the court erred in permitting the dismissal to be entered. Had the dismissal as to Farrar injuriously affected the interests of the other defendants in any manner, there might be cause for complaint, but it did not. All the burdens that were imposed by the judgment on Farrar were assumed by appellees, and the dismissal as to him did not affect the interests of appellants in the value of one cent. No moneyed judgment was rendered against the appellants and all the costs incurred by the joinder of Farrar with the appellants were assumed by appellees. The defendants were sued as representatives of a certain faction, and no property rights were involved in which the heirs or legal representatives of either of them had any interest whatever, and could not have been made parties. The death of one of the leaders of the faction had no effect on the case, because the powers and responsibilities of the leadership were at once vested

in the remainder. The right to control the Baptist Church in Timpson, if held by the defendants, was not property that would descend to their children. Such a theory would create greater complications in that church than have ever heretofore existed therein, and they have been sufficiently strenuous and strained, for if such theory could be sustained a case might be.presented of heirs who had become Catholics, Methodists or Presbyterians owning and controlling a Baptist Church.

In the fourth paragraph of the charge the court instructed the jury as follows:

"The First Baptist Church of Timpson is an independent religious society having the congregational form of church government. You are therefore charged that the will of the numerical majority of its members must control the use of the property belonging to the church, and when a division occurs in an organization of this character during a regular meeting of such organization which leads to a separation into dfferent and conflicting bodies, the right to the possession of the property belonging to such church must depend upon which of the two bodies had a majority of the members of the original membership at the time of the division, and who were present and acting at the time of the division, unless by the rules governing the method of transacting business adopted by the organization the majority failed to assert its right to control such meeting in the proper manner and at the proper time. And if you find that the First Baptist Church of Timpson were accustomed to use any parliamentary rules governing the method of transacting its business, and you further find that the rules as used (if you find they were used) make the announcement of the moderator on. an aye and no vote on a question of adjournment conclusive unless appealed from or a division demanded, and if you find in this case that the First Baptist Church at Timpson had adopted or were accustomed to use parliamentary rules to govern the methods for the transaction of its business, and you find that such rules, if any, made the announcement of the moderator on a question of adjournment on an aye and no vote conclusive unless a division is demanded or an appeal taken. And you further find that during the conference of the 2d of May, 1901, a motion was made to adjourn the conference and the same was seconded, and you further find that said motion was put to the conference and an aye and no vote taken thereon, and after being so taken the moderator declared that the ayes had it, and declared the conference adjourned, and there was no appeal from the decision of the moderator or division asked; then you will find for the plaintiffs unless it appears from the testimony that the noes were in the majority and that the moderator falsely and fraudulently made the announcement that ayes have it, in which latter event you will find for the defendants."

It is urged by appellants that the charge is erroneous because it made the right to the property turn on the rule as to the demand for a division of the vote and an appeal from the action.of the chair. It was shown

by the evidence that the Baptist Church at Timpson had used as its guide in parliamentary matters "Mell's Parliamentary Rules," and according to these rules, as well as the usages of the Baptist Church and other organizations, if a motion is made to adjourn and it is placed before the body and a vote taken by ayes and noes and no division is called for, and the presiding officer declares the motion carried and no appeal is taken from his decision, the body is adjourned. The decision of the presiding officer was binding upon the congregation of the church, and a court of the country can not be called upon to review such action, unless it had been shown that no opportunity was given for asking a division or unless it had appeared that an appeal to the house had been denied. It was attempted by appellants to show fraud, and the court properly instructed the jury that if fraud on the part of the presiding officer was shown the adjournment was not binding on the congregation. The charge of the court followed the ruling of the Court of Civil Appeals of the First Supreme Judicial District on a former appeal of this cause, and is certainly as favorable to the appellants as the facts would permit.

It was not error to refuse the special charge asked by appellants. In so far as it was correct or applicable it had been given in the general charge of the court. The vote on the adjournment of the meeting determined the question of which side had a majority of the members, and when the result was honestly declared by the presiding officer, his declaration under the rules was conclusive unless the proper parliamentary methods governing the church were invoked to set aside the ruling. The charge clearly placed this view of the law before the jury, and also instructed them that if it appeared that "a majority of the members present at the conference on May 2, 1901, voted against the motion to adjourn and the moderator in disregard of the will of the majority declared the meeting adjourned, then the majority had the right to reorganize the meeting, and when so reorganized would become a conference of the First Baptist Church of Timpson, and would be entitled to the control and possession of the church property. And if it appears from the evidence that on the motion to adjourn the noes were in the majority then you will find for the defendants, unless you find otherwise under the instructions given you in the fourth paragraph of this charge."

It was not error to permit the witness Sanford to state how many persons were present at the meeting. The main inquiry was to ascertain how the members voted at the meeting that fixed the status of the contending parties, and the numbers and names of those who were present and their affiliations were matters that would cast some light on the disputed point. The same matter in effect was testified to by other witnesses.

The list of members offered by appellants did not purport to be the names of those who were in attendance at the meeting, but consisted of

every one belonging to the church that had allied himself with the faction led by appellants. It is clear that the list in question could not have thrown light on the transaction involved.

The seventh assignment of error can not be sustained, because the bill of exceptions upon which it is based fails to show what the answer of the witness Bussey was in answer to the question to which objection was urged. It may be, so far as revealed by the bill of exceptions, that the answer was in favor of appellants instead of against them. Still v. Focke, 66 Texas, 718. There is evidence that sustains the verdict of the jury, and the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

It is strenuously contended that there is no evidence in the record that "Mell's Parliamentary Law" was ever adopted or commonly used in the Baptist Church at Timpson. The witness Bussey swore: "We have always in our church deliberations been governed by Mell's parliamentary law. It has never been adopted by the church, but it has been the understanding of the congregation that we should be governed by it. The night the trial of Mr. Gipson came up, the moderator asked what parliamentary law, if any, we used, and I answered 'Mell's.' No one said anything to the contrary. The moderator had a copy of Mell's work in his hand, and he held the meeting with the understanding that Mell would be the authority by which they would be governed.   *   *   * Under parliamentary rules as I have understood them, and according to common usage of our church and other bodies that I have had occasion to deal with, and as taught and laid down by Mell in his work on parliamentary law, if a motion is made to adjourn and seconded, and the moderator puts the motion to the house and calls for an aye and no vote on it, and the ayes vote and then the noes vote, and there is no call for a division, and the moderator then announces that the conference is adjourned, and no appeal is taken from the decision, the conference is finally adjourned. This has always been the manner of adjourning in our church. I have been a Baptist for about fifty-four years. I am familiar with the rules and regulations that govern Baptists churches and have been for a long time."

The evidence quoted has not only a tendency to show that the rules of a certain work on parliamentary law had been customarily used by the Timpson Baptist Church, but it goes further and establishes that, outside of any certain book on parliamentary rules, the customary manner of attacking the declaration of the presiding officer on any contested point on which any aye and nay vote had been taken was by asking for a division of the vote or taking an appeal to the house from the ruling of the presiding officer. In all deliberative bodies, ecclesiastical, political

or financial, some one must necessarily be intrusted with the authority to declare the result of votes taken on any subject, and so long as such declaration is not attacked in the manner sanctioned by long usage in every civilized country it must be decisive. If such power was not lodged in some person or persons, and if the exercise of such power is not given full faith and credit, anarchy and chaos would be the outcome, and instead of a deliberative assembly an irresponsible, turbulent mob would be the result. Independent of proof, the presumption would arise that the congregations of Baptist churches conducted themselves in an orderly and decent manner and according to the rules, customs and usages of all deliberative bodies. If an adjournment has been declared by the presiding officer as the result of an aye and nay vote, every consideration of regularity and proper procedure must require that it be decisive unless set aside at the time in the manner prescribed. The inquiry into the matter should be made at the time, for after an adjournment has been declared and the assembly dispersed, there can be no certain and accurate ascertainment of the number that voted on either side of the question. The truth of this assertion is amply verified by the circumstances in this case, which has involved so much animosity and strife, both sides claiming to represent a majority.

This court has not held, as insisted by appellants, that a presiding officer can create a majority by a mere declaration, but it does hold that when a presiding officer has declared the result of an aye and nay vote, it will be conclusive in the courts of the country, in the absence of a resort to the rules adopted or customarily used in setting aside such declarations. Oliver v. Hopkins (Mass.), 10 N. E. Rep., 776; Chamberlin v. Lincoln, 129 Mass., 70. If it be held that in case of fraud on the part of the presiding officer in announcing the result of an aye and nay vote, and investigation into the number voting on either side is permissible, then it may be said that no fraud was shown in this case.

The declaration of the presiding officer of the result of a vote is the declaration of the body over which he is presiding, and must be taken as true unless set aside in a regular lawful manner. Mr. Cushing in his manual on parliamentary law says: "In all his official acts and proceedings, therefore, he represents and stands for the assembly; and his will is taken for that of the whole body, compendiously expressed through him, and by his mouth, instead of being collected from the individual wills of all present." Cushing's Law and Prac. of Leg. Assemblies, sec. 294. In the case of Hicks v. Long Branch Commission, 54 Atl. Rep., 568, the Supreme Court of New Jersey held as held by this court, and on appeal of the case, the Court of Errors and Appeals. although the judgment was reversed on another point, agreed with it on the question of the conclusiveness of the declaration of a vote by a presiding officer. 55 Atl. Rep., 250.

Not only does the evidence fail to show anything but fairness and

honesty on the part of the presiding officer, but it also shows satisfactorily that an actual majority of the church present on the occasion of the division were in accord with the announcement of the moderator, and afterwards a majority of the members continued to act with the party in the church represented by appellees.

The motion for rehearing is overruled.

*Overruled.*

Filed November 30, 1904.

Writ of error refused.