## DICKSON et al. v. WILSON et al.
### (No. 10537.)

Court of Civil Appeals of Texas. Dallas. Oct. 15, 1929.

Rehearing Denied Nov. 16, 1929.

Hamp P. Abney, of Sherman, R. D. Evans, of Waco, Mike E. Smith and Fred S. Dudley, both of Fort Worth, for appellants.

B. F. Gafford and W. J. Durham, both of Sherman, for appellees.

LOONEY, J. The Baptist Missionary and Educational Convention of the State of Texas is a corporation organized to promote missionary effort and Christian education among the colored people, under the auspices of the Baptist churches of this state, and to co-operate financially and otherwise with the American Baptist Home Mission Society in its missionary and educational work for the colored people in the state of Texas.

The corporation is authorized to own, and does own, lands upon which are erected schools and an orphanage, and raises funds from voluntary gifts and from assessments paid by messengers to its annual meetings. It holds an annual meeting for the purpose, among other things, of electing officers, that is, a president, two vice presidents, a secretary, auditor, statistician, and four trustees, a majority vote of messengers being required for an election. The executive board of trustees consists of 12 members, chosen for a term of three years, 4 of whom are elected at each annual convention. The annual meeting is constituted of messengers from churches, pastors, licensed and ordained elders from regular Missionary Baptist churches, and messengers from associations and other regular Missionary Baptist organizations, auxiliaries, or co-operants, in accord with the objects of the convention. Each messenger, or accredited delegate to the annual meeting, before being enrolled and entitled to actually participate in the proceedings, is required to pay a certain fee; that is, pastors and ordained elders are required to pay $5 each, and other messengers $2.50 each.

This suit resulted from a controversy between rival factions, that is, a group headed by E. L. Harrison, who claims to have been elected to certain offices of the convention at its meeting in the city of Sherman on October 17, 1928, and a group headed by E. Arlington Wilson, also claiming to have been the duly elected officers at said meeting, and each, conjuring in the name of the corporation, sought an injunction, restraining the other group from exercising the functions of said offices, and from interfering with the management of the affairs of the corporation by the other faction.

It will serve no useful purpose to detail at length the allegations of the different pleadings filed below; sufficient to say that the different causes growing out of the controversy were consolidated, and the material issues joined are as just stated.

The case was tried to the court, without a jury, and resulted in a judgment in favor of Wilson and his associates, from which the Harrison group have appealed.

The gravamen of the charge of appellants against appellees is that A. L. Boone, who now resides in Cleveland, Ohio, but who, for a number of years prior to the convention held at Paris in October, 1927, held the office of president of the convention and had gathered around him a coterie of men, including appellees, organized them into a clique or conspiracy, for the purpose of dominating the affairs of the corporation, and by illegal and arbitrary conduct had, from time to time, thwarted and overridden the will of the majority of the messengers at the conventions, notably at the annual convention held in the city of Paris, in October, 1927, and the one at Sherman in October, 1928; that, notwithstanding a large majority of the delegates in each of these conventions favored Harrison and his associates for said offices, the Wilson faction was, as the result of arbitrary, unjust, and unfair methods, declared elected.

The record discloses that at the convention in Paris in October, 1927, and also at the convention held at Sherman in October, 1928—the proceedings of the latter only being under review—a majority of the accredited delegates were in favor of the Harrison group, and they would have prevailed over the Wilson group in the contest for the offices, but for the arbitrary rulings of the presiding officers, and the unfair and irregular method practiced by other officers of the Wilson group, in conducting the proceedings. In view of these facts, which we think stand out prominently in the record, if the claim of the Harrison group is based on a substantial compliance with the laws of the corporation, they ought to prevail in this controversy.

The proceedings at Paris are not now under review, and are considered only as evidence bearing upon the alleged conspiracy to dominate the affairs of the convention by Boone, Wilson, and others. The following facts bear on this issue. Prior to the opening of the convention in Paris, Wilson stated, as testified to by R. N. Gilbert (in the hearing of Wilson, and not contradicted or denied by him) to this effect: "Don't you know my opponents cannot beat me? I am Boone's candidate and Brother Boone is going to preside. When we get in the house if we see we have

a majority of the people there, we are going to have a standing vote, and if we see we have not a majority, we will demand a roll call, and don't forget we will have the roll. If they had the most votes, do you think we would allow them to use them?"

A. L. Boone did in fact preside, as predicted by Wilson, and arbitrarily ruled, out of order, several motions having for their purpose the correct enrollment of qualified messengers. A large number of accredited messengers paid their dues, were entitled to be enrolled, but were not, and, when the ballot was taken on the election of president, their names, not being upon the roll, were not called, and thus they were afforded no opportunity to vote. This ballot, as declared by the presiding officers, resulted in 276 votes for Wilson and 21 for Harrison, but its correctness was immediately challenged by T. E. George, a Harrison adherent, and a division demanded, which was arbitrarily refused by the chair; thereupon, George called for all who favored Harrison to stand, and 398 arose and were counted.

The record, in our opinion, discloses that the Harrison faction really predominated in numbers over the Wilson faction at the Paris meeting, and would have prevailed but for the failure to properly enroll the messengers who favored Harrison, and the arbitrary rulings of Boone, the presiding officer.

With reference to the proceedings of the Sherman convention, now under review, the trial court found that: "While a majority of the people in the convention favored the election of Harrison for president, they had not complied with the constitutional requirement in regard to the payment of the assessment; that 220 delegates, being 59 ministers and 161 messengers, had complied and voted for Wilson, and therefore, that he was shown to have been elected president."

The court further found that, while the program (or order of business) adopted by the convention was not carried out as originally presented, it was amended by a majority vote of the qualified delegates present, meaning, of course, the 220 delegates above referred to, and that, under the changed order of procedure, Wilson was elected.

The pertinent provisions of the constitution are these:

"Sec. 2: The members of this organization shall be divided into three classes as to enrollment, A-B-C, (a) messengers, laymen and licensed ministers, $2.50; (b) pastors and ordained elders, $5.00; and (c) annual members, $2.50.

"Sec. 3: Annual members may have equal privileges with the regular messengers and pastors, except to hold office; and no church shall be allowed more than three messengers for each 100 members represented in this convention.

"Sec. 4: No person shall be allowed voice or vote on the floor of this convention until requirements of Art. 4, secs. 1, 2, 3, and 4 shall have been met."

Thus we see that a messenger has no right to make motions, or to vote on questions, until he or she shall have paid the assessment provided for in section 2 of article 4. This provision, however, has no application to the adoption of the program, or order of procedure, or to any question that pertains thereto. This is apparent from a reading of section 2, article 8, of the constitution, as follows: "Before any official business of the Baptist Missionary and Educational Convention of the State of Texas shall be transacted, except the adoption of the call of the Convention and the convention program, the chairman of the enrollment committee shall certify to the secretary of the Convention a list of all members of the Convention who have paid their annual dues. When such list of members has been made to the secretary, such membership shall constitute a quorum of the Convention, provided one hundred persons as members in good standing with some Baptist church in Texas have met the requirements as set forth in Art. 4, secs. 1, 2, and 3 of this Constitution."

Brown, the presiding officer, ruled, on the motion to change the program for the election of officers from Friday, as originally proposed, to Wednesday, that only those delegates who, at that time, had paid dues could vote, and by this incorrect ruling a majority of the accredited delegates present (adherents of Harrison) were deprived of the right to vote upon or to participate in these preliminary proceedings.

At the time the vote was taken on the election of president, which followed immediately after the order of procedure was changed, the convention had not appointed a committee on enrollment, no opportunity was afforded messengers to pay dues and be enrolled, and no report of the enrollment of messengers had been made. This should have been done before any serious business of the convention was transacted, as provided by section 2, art. 8, of the constitution, above quoted. The 220 delegates who voted for Wilson paid dues to, and were enrolled by, T. S. Boone, who was appointed and acted as chairman of the committee on enrollment, under the provisions of section 3, art. 8 of the constitution, which provides that: "The chairman of the committee on enrollment shall be appointed at least fifteen days prior to the date when the Convention shall convene, and the same shall be announced in print in the manner and form determined by the president and secretary, so as to give the messengers an opportunity to enroll prior to the opening session of the Convention, but nothing herein shall be construed so as to prevent any member from enrolling at any time before the Convention closes."

Construing together sections 2 and 3 of article 8, we think it is plain that Boone was not authorized to act as enrolling officer, beyond the 15 days preceding the convention, and that his functions as such terminated on the assembling of the convention. The program, or order of procedure, adopted provided for the appointment of a committee on enrollment, which contemplated, of course, that opportunity and reasonable time would be afforded messengers to pay dues and be regularly enrolled before any serious business of the convention was taken up.

■ It is pertinent to state, at this point, that the day before the convention met a suit was filed in the Fifty-Ninth district court by Dickson and Gilbert, two Harrison adherents, describing themselves as "equitable trustees, suing for the benefit of the Baptist Missionary and Educational Convention, and for the benefit of the entire membership of the corporation," against E. Arlington Wilson, T. S. Boone, Jos. H. Brown, and others, for an injunction to restrain defendants, and each of them, from participating as officers in the meeting of the corporation at its annual meeting to assemble in Sherman October 17, 1928, and on final hearing for the restoration of the property of the corporation to the executive board of trustees, for a full accounting of their stewardship as officers, and for the perpetuation of the injunction. This petition was presented to Hon. F. E. Wilcox, district judge, on October 16, 1928, who indorsed his fiat, granting the temporary writ, restraining defendants, and each of them, from participating as officers in the meetings of the corporation. Although writs of injunction had not been served at the time Wilson was declared elected, Brown, the presiding officer, had notice that same had been granted, and was therefore bound to obey the mandate of court.

The unseemly haste, manifested in moving up the date for the election of officers, can find no reasonable explanation, other than a purpose on the part of those defendants who participated to circumvent the injunction and elect officers before the Harrison delegates were afforded an opportunity to enroll.

■■ The election of Wilson as president, and the four members of the board of trustees who were elected with him, was, in our opinion, consummated by arbitrary rulings of the presiding officers, in disregard of the constitutional law of the corporation, and should be held for naught. Gipson v. Morris, 31 Tex. Civ. App. 645, 73 S. W. 88; Gipson v. Morris, 36 Tex. Civ. 593, 83 S. W. 226. We are of opinion that, under the circumstances, the majority were fully justified in taking charge of the business of the convention and in conducting its affairs, and that Harrison and the four trustees elected with him were duly elected officers of the convention.

It seems that the Harrison faction elected eight trustees, whereas there were only four vacancies, and by inference only are we able to determine those first elected, which we do, and hold that the following four were elected, to wit, A. W. Pryor, J. S. Barron, T. E. George, Jr., and W. L. Dickson, who, together with the eight hold-over trustees, to wit, J. A. Brown, William Bowden, O. C. Colbert, L. A. Fuller, J. H. Harrington, H. M. Edwards, W. H. Varner, and C. V. Choice, constitute the board of trustees of said corporation; that the election of officers, other than for president and the four trustees mentioned, are not involved and therefore are not disturbed by this judgment.

This is a regrettable controversy. The members of each of these factions appear to be regular Baptists, adhering to the same confession of faith. No question of faith or of church government is here involved, nor in fact could properly have been, for Baptist churches are sovereign, each controlls its own internal affairs, and is not subject to the revisory power of a convention. The parties are simply at variance over procedural matters relating to the business of the convention; factional zeal and rivalry have been carried to such inordinate lengths that resort to the courts became necessary to settle the dissentions, and, unless their differences are amicably adjusted, valuable properties that belong to the convention will likely be lost, golden opportunities for service by these litigious rivals will be wasted, divisions in local churches will result, and individuals will become embittered against each other, all to the prejudice of the great cause, to which all profess allegiance.

In harmony with our view of the facts, we hold that E. L. Harrison was legally elected president of the convention at its Sherman meeting in October, 1928, and not E. Arlington Wilson, as found by the trial court; that A. W. Pryor, J. S. Barron, T. E. George, Jr., and W. L. Dickson were elected trustees, and not D. L. Penn, J. E. Campbell, Joseph Wilson, Jr., and D. T. Campbell, as found by the trial court; accordingly the judgment below is reversed and rendered here in favor of those found by us to have been legally elected, as above named; that other appellants take nothing by their appeal and the judgment below, in all other respects, is affirmed.

Reversed and rendered in part; affirmed in part.