BURL PADGETT et al. v. BESSIE VERNER et al.—
366 S.W. (2d) 545.

Eastern Section. January 10, 1963.

Certiorari Denied by Supreme Court April 3, 1963.

Charles C. Guinn, Etowah, for appellant.

W. D. Hitch, Athens, for appellee.

COOPER, J. The bill in this case, as amended, was filed by a majority of the Board of Deacons and 12 members of the Turtletown Victory Baptist Church of Polk County, Tennessee, seeking to enjoin the defendants, Bessie Verner, Ella Whitner, John Hopkins and Dillard Wilcox from exercising any control over church property, and from interfering with the use of the property for public worship.

The property in question consisted of approximately one acre of land, which had been conveyed to the Turtletown Victory Baptist Church on February 14, 1956, by deed executed by Fred Houston. The deed contained a reversionary clause which provided:

"It is expressly understood and agreed by the parties that this conveyance is made to the Turtletown Victory Baptist church for church purposes and none other, and in the event said property ceases to be used for church purposes by the Turtletown Victory Baptist Church, then said property will revert to the said Fred Houston, or his heirs or assigns."

After delivery of the deed, the communicants of the church erected a building in which to worship. The value of the property, including the building, was estimated to be $7,000.00.

On May 6, 1961, at a regular monthly conference meeting of the church, the following action was taken:

"Victory Baptist Church met in conference was found in peace and fellowship. Under new business motion was made and second and the Church voted on it that the Church property go back to Fred Houston and his heirs and services be discontinued. Motion carried. Conference was adjourned.

"Rev. Grover Moss (Mod.)
"Billy Wilcox (Clerk)"

In their bill, as amended, the complainants alleged that the conference action of May 6, 1961 was not regular or proper as it was the action of a minority of the church membership without any previous notice to the members of the church; that despite the action of the minority, the church was not dissolved, nor was the property abandoned; that a majority of the church membership had continued to meet and worship regularly in the church building; that the defendants had continuously interfered with the orderly use of the church premises by cutting off the water supply, by placing locks on the doors of the church, by defacing signs, breaking windows, playing a radio loudly during church services, etc., and that they would continue to do so if not enjoined. Further, the complainants charged that the defendants would attempt to convey the church property if not enjoined from doing so.

The defendants answered denying the charges of the complainants and alleging, in substance, that the action taken on May 6, 1961 was regular and proper and that, as the result, the property had reverted to the heirs of Fred Houston, deceased. Later, an amended and supplemental answer and cross-bill was filed by the defendant Bessie Verner, who was joined by William

Houston, Gilbert Eller and Mary Jewell Eller, being all the heirs of Fred Houston, seeking a decree of the court that the property had been abandoned, and that the title was in the heirs of Fred Houston. Cross-complainants also charged that the original complainants were not members of the Turtletown Victory Baptist Church at the time of the May 6, 1961 conference meeting, and were mere trespassers on the property interfering with its use by the heirs of Fred Houston. Cross-complainants sought an injunction and also sought damages for trespass.

After hearing proof, the Chancellor ordered each of the opposing sides in the church to appoint one representative, and that the two appointed name a third member to act with them as special masters of the court to canvass the membership rolls of the church and report to the court the members who were entitled to vote on May 6, 1961. These masters reported that the rolls of the church indicated that there were 69 members in good standing and entitled to vote.

The Chancellor entered a decree approving the report of the master, and finding "that a regular conference of certain members of the church was held May 6, 1961," and that the action set out above was taken; that there were some 17 members of the church attending said conference, and "that more than half of these members were heirs of Fred Houston or relatives of his heirs; that those others present at the meeting were friendly or agreeable to defendants efforts to divest the property under the terms of the deed."

The Chancellor further found that "notwithstanding the action of the body of members assembled May 6, 1961,

and their endeavor to discontinue the use of the property and thus invoke the reversionary clause of the deed, that the property has not in fact reverted unless it be shown by a preponderance of the proof that the members of this church or a majority of them, had actually ceased to use the church property known as the Turtletown Victory Baptist Church.'' The Chancellor then ordered that proof be taken to determine ''if in fact the property has been abandoned or that the members have ceased to use it as a church.''

At the later hearing, the Chancellor found that the ''preponderance of the proof establishes the fact that said church has not been 'abandoned or that the members have ceased to use it as a church' '', and ordered that the defendants be enjoined from interfering in any way with the use of the church property for public worship, from destroying or damaging any of the personal or real property of the church, and from attempting to convey or encumber the real estate of the church.

The defendant Bessie Verner was further ordered ''to restore the use of the water from the well for the use of the * * * Church'', and was enjoined from interfering with its use thereafter.

The relief sought in the cross-bill was denied.

Defendants and cross-complainants appealed contending, in substance, (1) that the evidence preponderated against the Chancellor's finding of fact that the Church had not been abandoned; (2) that the Chancellor erred in failing to hold that the action taken on May 6, 1961, being at a regular conference meeting of the church, was official and valid and constituted an abandonment of the church property so that it reverted to cross-com-

plainants; (3) that there was no evidence to support the Chancellor's decree enjoining the defendants, Ella Whitner, John Hopkins and Dillard Wilcox, from interfering with the use of the Church property, nor to support the court's adjudication of court costs against them.

The record indicates that the Turtletown Victory Baptist Church was organized on June 12, 1954. The church was not affiliated with any church organization but was governed by the congregation, who met in regular conference on the first Saturday night of each month. The church never adopted any by-laws, rules or regulations relative to the government of the church, nor to the acquisition or disposition of property, but depended on the Bible from "Genesis to Revelations."

As heretofore indicated, Fred Houston conveyed property to the Church on February 14, 1956, for the erection of a church building. The members of the church contributed time, money, labor and talents and constructed the present church building.

The life of the church was "stormy" and full of strife after the Reverend Grover Moss became pastor in 1958. The Reverend Moss decided to leave the Church on May 6, 1961, and his last official act was to preside at the regular monthly conference meeting of the church, which was attended by 16 or 17 members out of an enrollment of 69. More than one-half of the members present were heirs of Fred Houston or were relatives of his heirs.

Without any notice to the members of the church, and without any prior consultation with the members present, a motion was made, seconded and carried by unanimous vote of the members present to discontinue church services and permit the church property to revert to the heirs

of Fred Houston. The action of the conference, as recorded in the Minute Book of the church, is set out above.

Services were held the next morning, May 7, 1961, by members of the church and others who had not attended the conference meeting nor participated in the action of the church. Defendant and cross-complainant Bessie Verner informed these worshippers of the action of the conference the night before, and stated that she was the owner of the property, and that there would be no further services.

During the week following Mrs. Verner posted the property as "private", and boarded and pad-locked the door in her efforts to keep worshippers from the Church. As expected, this caused serious strife between the church communicants and Mrs. Verner.

The record reveals testimony of threats to the safety and well-being of both factions. Someone placed tacks in the road near the church. The windows of the church were broken. Ivory was removed from the keys of the piano.

Mrs. Verner would turn up the volume of her radio during church services in an effort to drown out the sevices. She also cut off the water supply to the Church, and told the church members that it would stay off until the controversy was settled by the courts.

In short, every ingenious device arising from the perverse instinct of man was utilized by someone in an effort to keep worshippers from enjoying their communion with God in the Turtletown Victory Baptist Church. However, regular worship services were held in the church building.

■ Considering the above evidence, we are of the opinion that it overwhelmingly demonstrates that the majority of the members of the Turtletown Victory Baptist Church had not, in fact, abandoned the church property, nor had services been discontinued, unless as insisted by the defendants and cross-complainants, the action taken on May 6, 1961 was official and constituted such an abandonment.

■ As pointed out above, the Turtletown Victory Baptist Church was an independent or congregational religious society, and had no organic connection with any external ecclesiastical body. As such, it was a pure democracy and "the will of the majority, when duly and regularly expressed through the appointed channels of the society, ordinarily prevails, not only when its effects are confined to the domain of purely religious, spiritual, or ecclesiastical concerns over which the civil courts have no jurisdiction, but also when its action or decision directly or indirectly affects civil or property rights over which the civil courts do have jurisdiction." Anno. 70 A.L.R. 78. See also Anno. 8 A.L.R. 109; 45 Am.Jur., Religious Societies, Sec. 22, p. 736.

■■ Where notice of the meeting of the membership is given in the usual and ordinary way provided by the rules of the church, the members who gather in response to such notice and call represent the entire congregation and may appeal for and act on behalf thereof as fully as if all members were present, and the whole body of the church is bound thereby, whether present or not. In such meeting only a majority of those present is necessary to finally settle and determine all the questions properly before the body. Bogard v. Boone, 200 Ky. 572, 255 S.W. 112, 114; Mack v. Kime, 129 Ga. 1, 58 S.E. 184, 24 L.R.A.,

N.S., 675 and notes: West Koshkonong Congregation v. Ottesen, 80 Wis. 62, 49 N.W. 24; Gipson v. Morris, 36 Tex.Civ.App. 593, 83 S.W. 226.

■ Routine business may be transacted at customary meetings without special notice, but where the meeting is held for the transaction of unusual and important business, some form of notice must emanate from the majority of a quorum, or from duly constituted authority, in order for a minority of membership in attendance at a customary meeting to bind the entire membership of the church. Barton v. Fitzpatrick, 187 Ala. 273, 278, 65 So. 390, 392; Highland View Baptist Church v. Walker, 259 Ala. 301, 66 So.(2d) 122.

As stated in Barton v. Fitzpatrick, supra,

"This church is a pure democracy, and, apart from some general regulations which have been accepted as a sort of covenant by all the churches of that denomination, each church is a law unto itself in the management of its own affairs. Its organization is congregational, and each church must of necessity be governed by laws which inhere in that form of government. * * * [E]very meeting, duly assembled, constitutes a quorum of the church for the transaction of the business for which it is assembled, and a majority of the quorum has the right to speak for the entire congregation, and its expressed will stands as the law of the church until it is changed or repealed by a subsequent meeting with similar authority. At customary meetings customary business may be transacted without special notice. But it is obvious that in a body of that constitution some form of notice that a special meeting will be held for the transaction

of unusual and important business is necessary, and must emanate from the majority of a quorum, or from duly constituted authority, in order that a minority may bind the entire membership. * * * [T]he opposition should have appealed to the congregation then assembled to call a meeting for the purpose desired, or to some future regular meeting assembled for some customary purpose of the church, for so only could the entire membership be affected by the notice and be given an opportunity to express their wishes, and so only can the theory of a purely democratic government be worked out in seemly and orderly practice.''

█ In the present case, the business transacted at the May 6, 1961 conference meeting cannot be characterized as customary or routine, as it involved the life of the church itself, and controlled the disposition of all church property. No notice of the business to be conducted at the conference meeting was given the congregation. In fact, the record reveals that the proposal to dissolve the church and permit the church property to revert to the Houston heirs came upon the ''spur of the moment,'' and under circumstances which lead this court to believe that the members present saw an opportunity to gain possession of valuable property to the exclusion of all other members of the church.

In the light of the above authorities, we conclude that the action of those present at the regular conference meeting of May 6, 1961, wherein they attempted to dissolve the church and permit the property to revert to the Houston heirs, was irregular, was not binding on the majority of members of the church, and did not constitute

such an abandonment of the property as would cause it to revert to the heirs of the grantor.

It is further insisted in the assignments of error that the Chancellor erred in decreeing that (1) the defendants Ella Whitner, John Hopkins and Dillard Wilcox be enjoined from interfering with the use of the Church property for public worship, and from attempting to execute a deed, contract or any other encumbrance upon the real estate of the Church, and (2) in adjudging that they, along with defendant Bessie Verner, pay one-half of the costs in the trial court, as there was no evidence to support the Chancellor's action. We agree.

There was no allegation nor proof in this case that the defendants Whitner, Hopkins or Wilcox had any interest in the church property, nor participated in efforts to prevent complainants and others using the church premises, other than they attended the regular conference meeting of the church and voted for dissolution. As pointed out above, the only defendant "tied in" with acts of interference with church worship, or claiming ownership of the property, was the defendant and cross-complainant Bessie Verner. Consequently, we think she should be the only defendant expressly enjoined by the Court, and the only defendant liable for costs in the trial court.

We feel, therefore, that the decree of the Chancellor should be modified by deleting the injunctions against the defendants Ella Whitner, John Hopkins and Dillard Wilcox, and by providing that the one-half costs adjudged against the defendants in the trial below be paid by the defendant Bessie Verner. The decree of the Chancellor is affirmed in all other respects.

Costs incident to the appeal are adjudged equally against appellants and cross-complainants Bessie Verner, Gilbert Eller, Mary Jewell Eller, and William Houston, and against their sureties.

McAmis, P. J., and Avery, (P. J. W. S.), concur.