## IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT KNOXVILLE

FILED

**December 11, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| ROBIN MEDIA GROUP, INC., | ) | Sevier County Chancery Court |
| A Tennessee Corporation d/b/a East | ) | No. 95-9-312 |
| Tennessee Cablevision, | ) | |
| | ) | |
|    Plaintiff/Appellant. | ) | |
| | ) | |
| VS. | ) | C.A. No. 03A01-9704-CH-00146 |
| | ) | |
| KENNETH M. SEATON, | ) | |
| EAST COAST CABLEVISION, and | ) | |
| THE CITY OF PIGEON FORGE, | ) | |
| TENNESSEE, | ) | |
| | ) | |
|    Defendants/Appellees. | ) | |
| | ) | |

From the Chancery Court of Sevier County at Sevierville.
**Honorable Chester S. Rainwater, Jr., Chancellor**

**Hugh B. Bright, Jr.**,
**Norman G. Templeton**,
WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, Knoxville, Tennessee
Attorney for Plaintiff/Appellant.

**C. Dan Scott**,
**Katherine M. Hamilton**,
SCOTT & ASSOCIATES, Sevierville, Tennessee
Attorney for Defendant/Appellee Kenneth M. Seaton.

**Douglas S. Yates**, BRABSON, YATES & HAMILTON, Sevierville, Tennessee
Attorney for Defendant/Appellee East Coast Cablevision.

**Norma McGee Ogle**, OGLE, WYNN & RADER, Sevierville, Tennessee
Attorney for Defendant/Appellee City of Pigeon Forge, Tennessee.

OPINION FILED:

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**


**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**WILLIAMS, Sr. J.**: (Concurs)

Plaintiff Robin Media Group, Inc., appeals the trial court's judgment dismissing its claims for declaratory and injunctive relief against Defendants/Appellees Kenneth M. Seaton, East Coast Television, and the City of Pigeon Forge. We affirm in part and reverse in part the trial court's judgment based, *inter alia*, on East Coast's concession that Robin Media had standing to maintain this action.

## I.  Factual and Procedural History

Robin Media has a non-exclusive franchise to construct, operate, and maintain a cable television system within the City of Pigeon Forge. Seaton also has a non-exclusive franchise to construct, operate, and maintain a cable television system in Pigeon Forge; however, Seaton's franchise authorizes him to provide cable television services only to those properties in which Seaton owns more than a fifty-one percent (51%) interest. Both franchises were granted by the City of Pigeon Forge.[1]

After obtaining his franchise, Seaton contracted with East Coast to construct, operate, and maintain a cable television system which would provide services to nine or ten hotels owned by Seaton in Pigeon Forge. Under this arrangement, Seaton paid an annual programming fee to East Coast. When East Coast built the cable system, it installed connection taps in front of every hotel in Pigeon Forge, not just Seaton's hotels. East Coast also ran drop lines to many non-Seaton hotels. Randy Coley, the owner of East Coast, explained that he installed the additional taps and drop lines for "future use" because he was hopeful that Seaton's franchise would be expanded at some future date. In that event, it would be a very simple matter for East Coast to expand the services being provided by merely activating the tap at each hotel.

In May 1993, Earlene M. Teaster, the City's manager, learned that East Coast was offering cable television services to non-Seaton hotels in Pigeon Forge. Teaster called Randy Coley of East Coast and asked him to cease using Seaton's franchise to provide cable television services to non-Seaton customers. According to Teaster, Coley informed her that he believed East Coast had

---

[1]*See* T.C.A. § 7-59-102 (1992).

the right to provide cable television services to non-Seaton hotels under Seaton's franchise. A few days after this conversation, Seaton called Teaster and informed her that he also had asked Coley to cease providing services to non-Seaton properties.

In May 1994, representatives of Robin Media complained to Teaster that East Coast was providing cable television services to at least six non-Seaton hotels in Pigeon Forge, and they asked Teaster to investigate the matter. In response to Robin Media's request, Teaster wrote a letter to Coley again asking him to cease providing cable television services to non-Seaton hotels. Coley did not response to Teaster's letter.

In October 1994, Melvin L. Hill, an employee of the City's Building and Planning Department, met with Seaton. During this meeting, Seaton indicated that he was not aware that East Coast had run drop lines into non-Seaton hotels. Seaton called Randy Coley from Hill's office and instructed Coley to disconnect any non-Seaton properties from the cable television system. Coley agreed to disconnect the non-Seaton hotels from the system. Shortly after the meeting in Hill's office, Seaton wrote a letter to City Manager Teaster inquiring about expanding his franchise.

East Coast did not discontinue providing cable television services to the non-Seaton hotels until August 1995. The following month, Robin Media filed this lawsuit against Seaton, East Coast, and the City, seeking declaratory and injunctive relief and damages. Prior to trial, Robin Media's damages claims were dismissed. Accordingly, the only issues to be adjudicated at trial involved Robin Media's claims for declaratory and injunctive relief.[2]

At trial, it was undisputed that East Coast entered into contracts with various non-Seaton hotels which purported to provide the hotels with cable television services. East Coast took the position, however, that its provision of services neither required a cable franchise nor violated Seaton's existing cable franchise. East Coast's owner, Randy Coley, testified that the programming

---

[2]The trial court's pre-trial order indicated that the City filed a cross-claim for injunctive relief against East Coast and that this claim was bifurcated. *See* T.R.C.P. 21 (providing that "[a]ny claim against a party may be severed and proceeded with separately"); T.R.C.P. 42.02 (providing that, in nonjury trials, the trial court may "order a separate trial of any one or more claims, cross-claims, counterclaims, or third-party claims, or issues").

services provided to the non-Seaton hotels were not transmitted by way of the cable television system but, rather, were transmitted by an infrared laser system that Coley had installed in addition to the cable system. Coley acknowledged that, in constructing the cable system, he installed taps in front of every hotel in Pigeon Forge and ran drop lines to a majority of the hotels. Coley insisted, however, that these taps and drop lines were never activated. According to Coley, East Coast installed a terminator at each tap to terminate its cable signal. Coley denied telling City Manager Teaster that he believed East Coast had the right to provide cable television services to non-Seaton hotels under Seaton's franchise.

Coley's testimony was contradicted by two Robin Media employees, one of whom testified that, when he reconnected the Robin Media cable system to the non-Seaton hotels in August 1995, he measured a signal being transmitted on the Seaton system at each tap or drop line. During this process, the employee did not observe any terminators on the Seaton system. The other employee testified that, when Robin Media employees disconnected the drop lines from the taps on the Seaton system, the motel television screens "went blank." When they reconnected the drop lines to Robin Media's cable system, the television pictures returned.

At the conclusion of Robin Media's presentation of proof, the trial court dismissed Robin Media's claims against Kenneth Seaton based on the court's finding that Robin Media failed to carry its burden of proving that Seaton authorized, directed, participated in, or had direct knowledge of East Coast's alleged violations of Seaton's franchise. The trial court further found that, when the violations were called to Seaton's attention, Seaton immediately instructed East Coast to cease and desist any such violations.

At the trial's conclusion, the trial court also entered an order dismissing Robin Media's claims against East Coast and the City. In support of its dismissal, the trial court ruled that, because Robin Media's cable franchise was non-exclusive, Robin Media lacked standing to maintain this action against East Coast and the City. In support of its dismissal as to the City, the trial court additionally ruled that there was "no allegation here for the Court to find that the City of Pigeon Forge has done anything or failed to do anything that the Plaintiff has sought from them; and therefore, there's no justiciable issue for the Court to determine as against the City of Pigeon Forge."

Finding no just reason for delay, the trial court directed the entry of a final judgment with respect to Robin Media's claims against the Defendants. *See* T.R.C.P. 54.02.

On appeal, Robin Media contends that the trial court erred (1) in dismissing Robin Media's claims based on the court's ruling that Robin Media lacked standing to bring this action, and (2) in dismissing Robin Media's claims against Seaton based on the court's finding that Seaton did not authorize, direct, or participate in any alleged violations of Seaton's franchise.

## II. Robin Media's Claims Against East Coast Television

On appeal, East Coast properly concedes that Robin Media had standing to bring this action. Contrary to the trial court's ruling, the non-exclusive nature of Robin Media's cable franchise did not preclude it from maintaining a suit for injunctive relief against Defendants who allegedly were providing cable television services without the authority of a franchise. *See Tennessee Pub. Serv. Co. v. City of Knoxville*, 91 S.W.2d 566, 568 (Tenn. 1936) (holding that electric company with non-exclusive franchise was entitled to maintain suit for injunctive relief against threatened or actual injury to property right through illegal competition); *Memphis St. Ry. Co. v. Rapid Transit Co.*, 179 S.W. 635, 638-39 (Tenn. 1915) (holding that jitney operator with non-exclusive franchise had property right which entitled it to maintain suit to enjoin activities of other businesses which were operating jitneys without authority of city franchise); *see also Frost v. Corporation Comm'n*, 278 U.S. 515, 521 (1929) (holding that business with non-exclusive franchise to operate cotton gin had standing to seek to enjoin activities of entity which operated gin without obtaining franchise). Our conclusion that Robin Media had standing to bring this action compels this court to reverse the trial court's judgment in favor of East Coast and to remand for the trial court to determine the central issues in this case, *i.e.* the legality of East Coast's activities and the propriety of Robin Media's request for injunctive relief against East Coast.

Although East Coast concedes that Robin Media had standing to bring this action, East Coast contends that this court should decline to review Robin Media's appeal on grounds of mootness. Specifically, East Coast contends that this appeal is moot because, even if East Coast was providing cable television services in violation of Seaton's franchise or without the authority of a

franchise, East Coast voluntarily discontinued these activities in August 1995.

The mere voluntary cessation of allegedly illegal conduct will not moot a controversy such as to prevent courts from determining the legality of the practice. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982); *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968); *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); *Ragsdale v. Turnock*, 841 F.2d 1358, 1364 (7th Cir. 1988), *appeal dismissed*, 503 U.S. 916 (1992); *Donovan v. Cunningham*, 716 F.2d 1455, 1461 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251 (1984). As the United States Supreme Court has explained,

> The test for mootness in cases such as this is a stringent one. Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave "[t]he defendant . . . free to return to his old ways."

*United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. at 203-04 (quoting *United States v. W.T. Grant Co.*, 345 U.S. at 632). In such cases, the defendant bears a "heavy burden" of persuading the court that a controversy is moot by showing that "there is no reasonable expectation that the putatively illegal conduct will be repeated, and [that] there are no remaining effects of the alleged violation." *Ragsdale v. Turnock*, 841 F.2d at 1365; *see also Donovan v. Cunningham*, 716 F.2d at 1461.

Based on the record before us, we are not persuaded that East Coast has met the heavy burden of demonstrating that the present controversy is moot. In any event, because the likelihood of further violations by East Coast is inextricably linked to the issue of the propriety of granting injunctive relief against East Coast, we conclude that these arguments are more appropriately addressed to the trial court on remand. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. at 289 (indicating that abandonment of illegal activity "is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power"); *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. at 203-04 (holding that case was not moot but noting that "it is still open to appellees to show, on remand, that the likelihood of further violations

is sufficiently remote to make injunctive relief unnecessary"); *United States v. W.T. Grant Co.*, 345 U.S. at 633 (indicating that prerequisite for granting injunctive relief is determination "that there exists some cognizable danger of recurrent violation, something more than the mere possibility"); *see also State ex rel. Baird v. Wilson County*, 371 S.W.2d 434, 439 (Tenn. 1963) (indicating that injunction will not be granted unless "injury is threatened or imminent and, in all probability, about to be inflicted").

### III. Robin Media's Claims Against Kenneth Seaton and the City of Pigeon Forge

As for Robin Media's claims for injunctive relief against Seaton and the City, the trial court made specific findings in support of its rulings that Robin Media was not entitled to injunctive relief against either Seaton or the City. Inasmuch as this case was tried by the court below sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against these findings, we must affirm, absent an error of law. *Dailey v. Bateman*, 937 S.W.2d 927, 930 (Tenn. App. 1996); T.R.A.P. 13(d).

Applying the foregoing standard, we conclude that the evidence does not preponderate against the trial court's finding that Robin Media failed to carry its burden of proving that Seaton directed or participated in East Coast's alleged violations of Seaton's franchise. In order to be entitled to injunctive relief against Seaton, Robin Media was required to prove that Seaton participated in the challenged activities. *Padgett v. Verner*, 366 S.W.2d 545, 550-51 (Tenn. App. 1963). At trial, no evidence was introduced to show that Seaton directed or participated in East Coast's allegedly illegal activities of providing cable television services to non-Seaton hotels in Pigeon Forge. Randy Coley of East Coast testified that Seaton did not ask him to provide cable television services to the non-Seaton hotels and that Coley installed the additional taps and drop lines on his own initiative. Randy Coley, or his representative, offered the cable services for sale and, on behalf of East Coast, entered into contracts for such services with the various hotels. The evidence showed that, when informed of East Coast's possible franchise violations, Seaton instructed East Coast to cease providing such services to non-Seaton hotels. The evidence also showed that Seaton did not receive any profits or fees relative to East Coast's provision of services to non-Seaton hotels.

Based on the foregoing evidence, we also conclude that the evidence supports the trial court's finding that Seaton did not authorize East Coast to engage in illegal activities. In this regard, the burden of proving an agency relationship was on the party alleging its existence, Robin Media, and the scope and extent of the authority of the alleged agent, East Coast, was a question to be determined by the trial court from all of the facts and circumstances in evidence. *Sloan v. Hall*, 673 S.W.2d 548, 551 (Tenn. App. 1984). Under the circumstances of this case, we affirm the trial court's decision to deny Robin Media's claim for injunctive relief against Seaton based on the court's finding that Seaton did not authorize East Coast to provide cable television services to non-Seaton hotels. In affirming the trial court on this issue, we reject Robin Media's argument that the provisions of Seaton's franchise and/or the federal Cable Communications Policy Act[3] mandate the conclusion that Seaton was vicariously responsible for Coley's actions.

We likewise conclude that the preponderance of the evidence supports the trial court's decision to deny Robin Media's claim for injunctive relief against the City of Pigeon Forge based on the court's finding that the City already had performed the acts sought by Robin Media. In response to complaints by Robin Media and others, the City promptly instructed East Coast to cease and desist offering cable television services to non-Seaton customers. Moreover, there was evidence that the City was instrumental in convincing Randy Coley of East Coast to quit providing services to the non-Seaton hotels. Coley testified that he made the decision to discontinue the services, in part, because it "just wasn't worth fighting the City." Finally, we note that the City has filed a cross-claim for injunctive relief against East Coast which has been severed from this proceeding.[4] Under these circumstances, we conclude that the trial court properly ruled that Robin Media was not entitled to injunctive relief against the City.

Although we affirm the trial court's rulings that Robin Media was not entitled to injunctive relief against Kenneth Seaton or the City, we conclude that it was premature for the trial court to dismiss these Defendants from the lawsuit. In the event that the trial court determines on

---

[3]*See* 47 U.S.C.A. §§ 521--561 (West 1991 & Supp. 1997).

[4]*See supra* note 2.

remand that some form of declaratory relief is appropriate, both Seaton and the City would be necessary parties to such a proceeding. In seeking declaratory relief, Robin Media was required to name as parties "all persons . . . who have or claim any interest which would be affected by the declaration." T.C.A. § 29-14-107(a) (1980). Thus, Robin Media properly named Seaton as a party to this action because Seaton owns the cable franchise which was the subject of this lawsuit and which would be affected by any declaratory judgment issued by the trial court. Robin Media also properly named the City as a party to this action because the franchise at issue was granted by the City and, by definition, the City has an interest which would be affected by a declaratory judgment.[5] *See, e.g.*, *Harrill v. American Home Mortgage Co.*, 32 S.W.2d 1023 (Tenn. 1930) (holding that trustee, who held title to property, and bank, which held notes under pledge to secure obligations of mortgage company, were necessary parties to suit seeking declaration as to validity of mortgage contracts); *Baker v. Hancock County Election Comm'n*, 1987 WL 7717, at *3 (Tenn. App. Mar. 12, 1987) (holding that, in action against county election commission in which determinative issue was whether plaintiffs lived in Hancock County or Hawkins County, plaintiffs were required to join as indispensable parties both counties).

## IV. Conclusion

We affirm those portions of the trial court's judgment denying Robin Media's claims for injunctive relief against Seaton and the City of Pigeon Forge; however, we reverse those portions of the trial court's judgment dismissing the Defendants from this proceeding and remand this cause for the trial court to adjudicate (1) Robin Media's claim for injunctive relief against East Coast and (2) Robin Media's claims for declaratory relief as to all three Defendants. Costs of this appeal are taxed to East Coast, for which execution may issue if necessary.

---

[5]Alternatively, in seeking declaratory relief, Robin Media was required to name the City as a party to this action if the proceeding involved the validity of a City ordinance or franchise. *See* T.C.A. § 29-14-107(b) (1980). In this regard, Robin Media's complaint did not challenge the validity of the cable franchise under which East Coast and Seaton were providing cable television services. Rather, Robin Media's complaint alleged that, in providing such services, East Coast and Seaton were exceeding the scope of Seaton's franchise. We note, however, that at trial Seaton raised an issue as to the validity of the cable franchise under which Robin Media was operating.

FARMER, J.

_____
HIGHERS, J. (Concurs)


_____
WILLIAMS, Sr. J. (Concurs)