PUGH et ux. v. BURTON et al.—166 S. W. (2d) 624.

Middle Section.   July 11, 1942.

Petition for Certiorari denied by Supreme Court, December 5, 1942.

B. N. Nixon, of Alexandria, and Cummings & Melton, of Woodbury, for appellants.

McAllen Foutch, of Smithville, for appellees.

R. L. Turner, of Smithville, for petitioner.

HOWELL, J.  The bill in this cause was filed by the complainant, S. V. Pugh, and his wife, Fannie Burton Pugh, against W. L. Burton, a brother of Mrs. Pugh, and his wife Emma Brandon Burton and sought a reformation of a deed executed by the complainants on March 24, 1939, to the defendants, conveying 125 acres of land in DeKalb County, Tennessee, and damages for the alleged wrongful ejectment of complainants from this property.  The bill also prayed in the alternative that the deed mentioned be declared null and void and cancelled and that an alleged agreement between the parties by which this land was to be reconveyed to complainants be enforced and for damages for the alleged breach of this agreement.

The defendants answering denied the material allegations of the bill with reference to any agreement to reconvey and plead the Statute of Frauds as no writing of any kind indicating such an agreement had been signed by them as provided by Section 7831 et seq. of the Code of Tennessee.

An application for a jury was withdrawn and the case was heard by consent upon oral testimony by the Chancellor under Chapter 119, Acts of 1917, page 354, section 1 (Code of Tennessee, Section 10564).

The Liberty Savings Bank of Liberty, Tennessee, filed a petition seeking a judgment on a note executed by complainants, secured by a chattel mortgage, and asking a sale of the complainants' interest in some personalty upon the farm.  The proceedings under this petition will be hereafter mentioned.

Upon the hearing the Chancellor dismissed complainants' bill and sustained the Bank's petition.

The complainants have perfected their appeal to this Court and have assigned errors as follows:

" 'The Chancellor erred in overruling and disallowing the demurrer of the complainants to the petition filed by the Liberty Savings Bank in this cause on May 19, 1941, the grounds of as follows:

" '1.  The petitioner has a clear and adequate remedy at law; 2, The bill shows on its face that petitioner has contracted and conspired with defendant Burton to dispose of the subject matter in litigation in violation of the injunction in this cause, and therefore does not come into Court with clean hands; 3, Because petitioner seeks a judgment, for interest and attorney fees on an unmatured note; and 4, Petitioner seeks a Receiver for property, not in dispute and having no interest in the subject matter, and the debt of petitioner is not due and no allegation of waste alleged by petitioner in his bill.' "

"2. The Chancellor erred in finding in favor of defendant W. L. Burton and wife, and in the dismissal of their bill because it appears from the preponderance of the proof that the defendants held said title to said tract of land in trust for them for the purpose of obtaining a loan with the express understanding and agreement that defendants would make and execute a contract in writing setting out the purpose of complainants' conveyance to them, and the extent of the ownership of the title of the defendants in and to said tract of land.

"3. The Chancellor erred in holding from the proof and under the law that the plea of the Statute of Frauds interposed by defendants in their answer was determinative of complainants' cause of action regardless of the weight of the proof for the reason said property was so held by defendants in trust and for the purpose of obtaining a loan and that their agreement to execute a contract to this effect could not and would not be construed to be a contract for the sale of the land, and, therefore, could not fall within the Statute of Frauds requiring the same to be in writing.

"4. The Chancellor erred in sustaining the petition of the Liberty Savings Bank and in awarding judgment against the complainants for $415.27, because it appears from the preponderance or greater weight of evidence that the indebtedness claimed against complainants as evidenced by note was not due.

"5. The Chancellor erred from the proof in dismissing complainants' bill, their cross bill and answer filed to the petition of defendant Liberty Savings Bank and in taxing complainants with the costs of the cause."

The first and fourth assignments of error are that the Court erred in not sustaining complainants' demurrer to the petition of the Liberty Savings Bank and in sustaining this petition. The record discloses that the petition was filed on May 20, 1941, and on May 22, 1941, the complainants filed a demurrer to this petition and on the same day filed an answer and cross-bill in which they denied that petitioner was entitled to any relief. On May 21, 1941, the Chancellor, pursuant to the prayers of the petition, appointed a receiver to take charge of and sell some personalty located upon the farm in controversy. We do not find any further reference to the demurrer in the record.

In regard to demurrers and when they are disposed of, Gibson's Suits in Chancery, paragraph 314, in part says as follows:

"But, as in case of a plea in abatement, the demurrant must not take any step in the cause until his demurrer has been disposed of, or he will be conclusively deemed to have abandoned his demurrer. The object of a demurrer is to ascertain whether the Court will require the defendant to make any further answer to the bill, and if the demurrant voluntarily makes further answer, either by filing a plea or an answer, such action is a voluntary abandonment of his demurrer.

"If the defendant has incorporated a demurrer in his answer as provided by the Code, he must, also, comply with the further requirement of setting down the matters of demurrer for argument at the next term of the Court, or it may be treated as abandoned. And even where leave has been given to rely on a demurrer in the answer, the advantage of it will be lost, and the demurrer waived, unless it is disposed of before the cause is heard on the merits."

█ The complainants having filed an answer and not having sought any action on their demurrer, and a receiver having been appointed under the prayers of the petition, the receiver having, under orders of the Court, sold the personalty involved, delivered it to the purchasers and paid the proceeds of the sale into Court, and a final decree having been entered ordering distribution of these funds, they cannot now be heard to attempt to rely upon their demurrer.

██ There is ample evidence in the record to sustain the decree of the Chancellor upon the petition and the fact that the note was not due until after the petition was filed will not prevent a Court of equity from granting relief to the petitioner in protecting the personalty upon which it had a lien. A Chancery Court will appoint a receiver where there is danger of property upon which petitioner has a lien being misused or some injury done to it. It is noted further that the complainants, in their answer to the Bank's petition, neither admitted nor denied their indebtedness to the Bank and then said:

"They are willing that any of the personal property described in the bill be sold by the Clerk and Master under any terms or conditions the Court sees fit and have the funds retained by him pending the final hearing of this cause."

█ From the proof it appears that the complainants were indebted to the Liberty Savings Bank in the sum of $415.27, which indebtedness was secured by a lien upon complainants' one-half interest in the personalty described in the petition, and sold by the receiver. The Chancellor properly gave petitioner a judgment for this amount and ordered one-half of the proceeds of the sale applied toward its satisfaction.

The first and fourth assignments of error are therefore overruled.

After the death of the parents of the complainant Mrs. S. V. Pugh and her brother, the defendant W. L. Burton, and in 1937, Mrs. Pugh acquired by a conveyance from her brother and sisters their three-fourths interest in the farm which had belonged to their parents. The farm was valued at $5,000 and notes were executed by Mrs. Pugh and her husband for a part of the purchase price of these interests and liens retained to secure them. The complainants borrowed money from the Bank to make cash payments to the other heirs. The notes given her brother and sisters were purchased from them by a Mr. Cathcart and a Mr. Hamilton, who are not parties to this suit. The complainants did not prosper in the operation of the farm and

were unable to pay their debts or to pay these notes and after asking the defendant Burton for assistance, the deed of March 24, 1939, was executed which conveyed the farm to Burton for the purported consideration of $5,000. It is admitted that this $5,000 was not paid at the time the deed was delivered.

The complainants say that the deed was executed for the purpose of enabling the brother W. L. Burton to secure a loan of sufficient funds to pay complainant's debts and that the defendant Burton agreed to reconvey the property to them, they to assume this loan, and that they were to continue to live on the farm and operate it.

In the fall of 1939 disagreements arose between Pugh and Burton as to the operation of the farm and a heated controversy developed between them in which bad language and epithets were used by Pugh.

The defendants deny that there was an agreement to reconvey the property and say that prior to March 24, 1939, the complainants were indebted to various parties in amounts that were past due and unpaid and secured by liens upon the farm, and the holders of these liens were threatening foreclosure proceedings; that complainants, being thus faced with the loss of the farm and having failed to get Roy Pugh, a brother of complainant S. V. Pugh, to assist them, approached defendant Burton and sought to induce him to take over the farm and assume these debts which the defendant Burton finally agreed to; that thereupon defendant Burton, after the delivery of the deed did assume these debts amounting to about $4,200 and interest, and has paid a portion of them and accruing interest on the remainder agreeably to the lien holders.

After the execution of the deed the complainants continued to live on the farm and operate it under an agreement with the defendant Burton that they were to have one-half of the proceeds, the other half going to defendant Burton as rent.

After the disagreement in the fall of 1939 about the operation of the farm, the complainants having failed to pay over any part of the proceeds as his rental, the defendant Burton instituted unlawful detainer proceedings and had complainants ejected from the property. The complainants then filed the bill in this case.

In his findings of fact the Chancellor said:

"None of the agreement or contract relied upon by complainants for relief is in writing. Parole evidence relied upon altogether to sustain their position. There is no insistence that any agreement or understanding was had with the deft. Mrs. Burton, although she is a grantee in the deed and is made a party defendant. All the transaction relied upon by the complainants were conducted with the defendant, Walter Burton."

"Aside from the statute of frauds the Court is of the opinion, considering all the testimony that there is not sufficient corroboration of

the complainants contention to set aside the solemn instrument executed by complainants unconditionally and absolute on its face. Aside from some slight corroboration in the testimony of J. M. Bradley, there is no corroboration of the complainants. The testimony of the grantors in a deed and in this case husband and wife, under all the facts and circumstances and the entire record, as opposed to the positive statement of the defendant and of the recitals of the instrument is insufficient in the Court's opinion to invalidate the instrument. All the parties are shown to be of excellent character. . . . There is no doubt from the statements of complainants and from all the proof that they intended to execute the deed to defendants. Under complainants statement one of the purposes of the deed was for Burton to procure a loan from Duke. This was done. Defendant Burton has assumed the payment and is liable for the indebtedness, as well as other indebtedness against the place under the facts in this case, although the parties holding the lien indebtedness are looking primarily to the land for satisfaction of their indebtedness.''

We concur with the Chancellor in these findings of fact and note further that the complainants have not paid or offered to pay to the defendant Burton the amounts he had paid out on their debts, or to relieve the defendant Burton from the obligations he has assumed and renewed which originally were created by them. They do not come into equity offering to do equity.

It is well settled that in order to set aside a written instrument such as the deed in this case, the proof must be clear, cogent and convincing and the evidence for the complainants does not meet this requirement. See Section 945, Gibson's Suits in Chancery and cases cited in notes.

From a careful reading of this record we find that the complainants have not met the burden of establishing that any fraud had been perpetrated upon them. They were unfortunate in not being able to pay for this property, but there is no merit in this claim that the defendant Burton has dealt unjustly with them.

We cannot agree with the Chancellor however that the plea of the Statute of Frauds is conclusive of this case. If an oral agreement had been established, made contemporaneously with the deed, to hold the property in trust for complainants, it may have been within the rule set out in Insurance Company v. Waller, 116 Tenn., 1, on page 8, 95 S. W., 811, on page 813, 115 Am. St. Rep. 763, 7 Ann. Cas., 1078, where Mr. Justice Shields said:

''It is now well-settled law in Tennessee that a contemporaneous parol agreement, made at the time of the execution and delivery of a conveyance of real estate, absolute upon its face, that the vendee will hold the property conveyed in trust for a certain person, is not within the statute of frauds, and, aside from the rights of creditors of

the original vendor and innocent purchasers from the vendee, vests in the beneficiary of the trust a valid equitable title to the property conveyed, which a court of equity will enforce. We need only refer to the recent cases in which the reasons for the rule are fully and clearly stated. They are Thompson v. Thompson [Tenn. Ch.], 54 S. W., 145; Renshaw v. First Nat. Bank [Tenn. Ch.], 63 S. W. [194], 205, 206; Woodfin v. Marks, 104 Tenn. [512], 519, 520, 58 S. W., 227; Mee v. Mee, 113 Tenn. [453], 455, 82 S. W., 830, 106 Am. St. Rep., 865."

Also in the case of Young v. Brown, 136 Tenn., 184, on pages 191, 192, 188 S. W., 1149, on page 1151, Chief Justice Neil said:

"Indeed, we do not doubt that under such an arrangement the parol agreement to make the reconveyance would attach to the estate going into the hands of the vendee, and if he should attempt to violate it and hold the property for himself, he could be compelled in equity to make the reconveyance, since in this state the seventh section of the English statute of frauds does not obtain, and such a parol trust would be valid. Thompson v. Thompson (Tenn. Ch.), 54 S. W., 145, . . . Mee v. Mee, 113 Tenn., 453, 82 S. W., 830, 106 Am. St. Rep., 865; Insurance Co. v. Waller, 116 Tenn., 1, 8, 95 S. W., 811, 115 Am. St. Rep., 763, 7 Ann. Cas., 1078."

See, also, Watkins v. Watkins, 160 Tenn., 1, 22 S. W. (2d), 1.

The complainants, however, have failed to establish a contemporaneous agreement to hold the farm in trust for them and have failed to do equity by offering to reimburse the defendant Burton and relieve him of the obligations assumed by him on their account and their bill must be dismissed.

The third assignment of error is sustained and the second and fifth assignments are overruled.

The decree of the lower Court will be affirmed and the cause remanded to the Chancery Court of DeKalb County for the execution of the decree of the Chancellor as to the funds paid into Court by the Receiver.

The costs of the appeal will be paid by the appellants and the costs of the lower Court will be paid as decreed by the Chancellor.

Felts, J., concurs.

Affirmed and remanded.