**Jack FRY, David Miller, Gary Truelove, J.R. Pentecost, Jim Dunn, and Randy Teat, Trustees, for Christian Fellowship Ministries, Plaintiffs–Appellees,**

v.

**EMMANUEL CHURCHES OF CHRIST, INCORPORATED, Defendant–Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

April 8, 1992.

Application for Permission to Appeal Denied by Supreme Court June 29, 1992.

Larry W. Simmons, Springfield, for plaintiffs-appellees.

William E. Farmer, Lebanon, for defendant-appellant.

## OPINION

LEWIS, Judge.

Appellant, Emmanuel Churches of Christ, Incorporated (ECOC), appeals from the Chancellor's judgment divesting title to property out of ECOC and vesting title in appellees, the Trustees for Christian Fellowship Ministries.

The pertinent facts are as follows:

The First Apostolic Church, an unincorporated church group, owned real property (the property) consisting of a church building and a parsonage in Springfield, Tennessee. This religious body and its members, beginning in approximately 1970, had taken the names of the Springfield Pentecostal Church, the Oneness Pentecostal Church, and the First Apostolic Church. The original deed was made to the Springfield Pentecostal Church, George Stubblefield, J.R. Pentecost, and Wesley L. Brown as trustees of that church. One of the original trustees, J.R. Pentecost, is a plaintiff to this action.

From approximately 1980 until 1986, Jerry Hayes was the pastor for the First Apostolic congregation that met in the subject real property. Pastor Hayes initiated discussions with officials of the Assembly of the Emmanuel Churches of Christ (ECOC) about the possibility of affiliating with the ECOC. ECOC is a centralized church organization of approximately thirty-six churches. All congregations are subject to the governing authority of ECOC and all property is held for the benefit of the ECOC. Bishop Rob Roy Banks has acted as Bishop–Overseer since 1980.

In the Fall of 1985, the sign in front of the subject real property was changed from "First Apostolic Church" to "Emmanuel Church of Christ." In the early summer of 1986, the Springfield congregation was facing severe attendance problems along with financial difficulties. Pastor Hayes of the Springfield congregation approached ECOC Bishop Rob Banks about the need to join ECOC and to have the congregation's mortgage paid. On 21 July 1986, Pastor Hayes led a congregational business meeting to discuss available options. According to the minutes of this meeting, Trustees Jerry Hayes, David Miller and David Terry were authorized to convey the church and parsonage to ECOC and did so by deed on 22 August 1986. Prior to this conveyance, ECOC paid off the Springfield congregations's outstanding mortgage indebtedness.

In the summer of 1986, Randy Teat, appointed minister of ECOC, took over the leadership of the Springfield congregation. Within a year of joining ECOC, attendance greatly improved at the Springfield church.

On 20 November 1987, ECOC sold the vacant parsonage for $28,500.00 and, after deducting expenses, ECOC invested the remainder of the money back into the Springfield church building. This transaction took place sixteen months after the property had been conveyed to ECOC.

Sometime in 1986, Pastor Randy Teat began to disagree with the ECOC by-laws and shared his concern with the Springfield congregation. In 1988 Pastor Teat formed a group called Christian Fellowship Ministries (CFM). On 28 September 1988, a letter was sent to Bishop Banks from Christian Fellowship Ministries concerning the status of "the property." On 22 October 1988, Bishop Rob Roy Banks sent a letter officially notifying CFM that they had been ex-communicated from ECOC and that they were holding ECOC property illegally. On 14 November 1988, plaintiffs, as Trustees of CFM, brought this litigation claiming to be a successor of Springfield Pentecostal Church. The plaintiffs contended in the original complaint that the 22 August 1986 conveyance should be set aside because of conspiracy and fraud.

In a memorandum opinion filed 13 March 1991, the court found in pertinent part as follows:

The members claim that they were left to understand that this was a transfer for convenience and a transfer to secure the payment. After the mortgage was repaid then the church could be restored to them. They did not understand that their membership was contingent upon a continued loyalty to the Emmanuel Churches of Christ and if not they could not occupy these premises. The defendant reflects that the minutes are in order and that the group voted and the transfer was made. In addition there was a payment of money by Mr. Banks on behalf of the Emmanuel Churches of Christ and there was consideration for this transfer.

The transfer of a parcel of real estate from one religious body to the other *brings into* question the purpose of that transfer. Consideration is the term utilized to determine fair exchange in the transfer of property in the market place; but this Court believes that *purpose* is the measure of value for the transfer of property by and between religious entities. This is true when the property is used solely for religious purposes, *i.e.*, the church building; and the idea it would continue to be used for church purposes.

The Springfield church body was joining an association and one of the requirements to join this association was a transfer of the real estate. The Emmanuel Churches of Christ required that the church in Springfield deed the property to that church body in order for the Springfield church to come within the Emmanuel Churches of Christ convention. The proof is fairly evident with respect to what the church in Springfield thought it was gaining. The church believed, as was represented to it by their departing pastor, that a quality pastor would be available if they joined the Emmanuel Churches of Christ. This was the only benefit (churchwise) that the Springfield church was to gain by transfer of its real estate. The amount of the mortgage was small compared to the real estate's value. This real estate was composed of a church meeting hall and a parsonage. The question of consideration where money is concerned might be applicable to the parsonage but not to the church building where the meetings were to take place.

The newly assigned pastor (Mr. Teats) then led the Springfield congregation in its withdrawal from the Emmanuel Churches of Christ. Thus the bare consideration (gaining a pastor) of this transfer, failed. According to the defendant there was no two-way street in the dealings with this real estate. Once the Springfield church gave up its real estate and joined the Emmanuel Churches of Christ, then if it chose to withdraw it lost all. The idea that a religious body would transfer (for the purpose of a merger) its religious property without recourse, is foreign to the religious principles of our state and nation.

    . . . .

The Court looks to what the purpose of this transfer was. That purpose was a religious one, *i.e.*, the continuation of a religious practice with the addition of a pastor. There was never any intent nor was there a purpose to deliver the meeting hall of the religious body over to a fellow church group, without recourse. When the purpose of the transfer, gaining a pastor, failed, then the transfer became subject to rescission.

On 8 May 1991, the Chancellor entered a final order decreeing that "all right, title and interest, in [the property in question] be divested out of Emmanuel Churches of Christ, Incorporated, and vested in Jack Fry, David Miller, Gary Truelove, J.R. Pentecost, Jim Dunn and Randy Teat, Trustees for the Christian Fellowship Ministries, their successors and assigns." The Chancellor also granted Mr. Rob Roy Banks judgment against the plaintiffs for $1,300.00 and granted a judgment to ECOC's attorney against the plaintiffs for $11,588.55 in attorney's fees.

Appellant's first issue is: "Did the Lower Court have jurisdiction to hear this cause of action, since the basis for the differences between the parties was a religious disagreement?"

■ Plaintiffs' complaint alleges mistake, lack of consideration, fraud and duress in the procuring of a deed to real estate. While our courts have declined to adjudicate religious matters, they have held that they would intervene in genuine disputes regarding property rights when there has been a withdrawal by a local church. *Church of God in Christ, Inc. v. Middle City Church of God in Christ*, 774 S.W.2d 950, 952–53 (Tenn.App.1989); *Padgett v. Verner*, 51 Tenn.App. 285, 366 S.W.2d 545, 549 (1963). Clearly, this is a property dispute, not a religious matter. Therefore, the Chancery Court had jurisdiction to hear the case. This issue is without merit.

Appellant's next issue is: "Does the evidence presented preponderate against the Lower Court's conclusion that the deed of conveyance should be rescinded for failure of consideration or purpose" and "does the evidence taken as a whole, preponderate against the decision of the lower court as to the rescission of the deed of conveyance"?

■ In order for a court to set aside a deed, the proof must be clear, cogent and convincing. *Pugh v. Burton*, 25 Tenn.App. 614, 620, 166 S.W.2d 624, 627 (1942).

In *Williamson v. Upchurch*, 768 S.W.2d 265, 271 (Tenn.App.1988), this Court stated:

Rescission involves the avoidance or setting aside of a transaction. It is an equitable remedy, available where the contract was induced by fraud or duress or where one party unequivocally renounces the contract or is legally unable to perform. It is intended to return the parties to the positions they were in before the transaction took place.

768 S.W.2d at 271 (citations omitted).

■ Although the Chancellor in his memorandum opinion questioned ECOC's organization and business practices, he did not find evidence of fraud or duress. Our review likewise fails to find fraud or duress. A business meeting was held at the Springfield church on 21 July 1986. The meeting had been announced to the general congregation and lasted about an hour. Pastor Jerry Hayes led the meeting and discussed the pros and cons of centralized church organization. The minutes of the Springfield congregation clearly show that on 21 July 1986 the Springfield congregation had a duly authorized meeting, voted to enter into the Assembly of the Emmanuel Churches of Christ, and authorized the conveyance of the property. The deed was properly executed on 22 August 1986. The deed provides: "That FOR AND IN CONSIDERATION of the sum of Ten Dollars ($10.00), cash in hand paid and other good and valuable consideration, the receipt of all of which is hereby acknowledged, the Grantors have this day bargained and sold and do by these presents hereby sell, transfer and convey unto the said Grantee, successor and assigns, [the property]."

■ Where a deed recites the consideration to be "$1.00 and other good and valuable consideration" and where the grantor

knows that he is executing a deed, the conveyance will not be set aside on the basis of insufficient consideration in the absence of fraud or the intervention of the rights of third parties. *McGill v. Headrick,* 578 S.W.2d 377, 382 (Tenn.App.1978).

Furthermore, the true consideration paid or promised in a deed can be shown to have been other than that received in the instrument. *Harkins v. Wells,* 13 Tenn.App. 299 (1931). In its complaint, plaintiff stated that the congregation was experiencing financial difficulties "and that it owed Security Federal Savings and Loan $5,524.46 which was secured by a mortgage on the church building and a house and lot owned by the congregation, and said debt was past due." In this case, ECOC paid off the mortgage on the property. When the Springfield congregation discussed the pros and cons of joining ECOC, Pastor Hayes stated that one important benefit to joining ECOC would be the ability to "protect the church from the encroaches of false teachings and false doctrine" of independent preachers. Furthermore, ECOC appointed Randy Teat as pastor to the Springfield church and, under the guidance of ECOC, the Springfield congregation grew from approximately eight to ten active members to approximately sixty members.

In the original conveyance which occurred on 22 August 1986, there were actually two properties conveyed to ECOC. One of the properties consisted of the church building, which is the subject of this litigation, and the other property consisted of the parsonage which was located adjacent to the church building. In November 1987, the vacant parsonage property was sold by ECOC after consulting with the local pastor Randy Teat. This conveyance was accomplished over sixteen months after the property was conveyed from the First Apostolic Church to ECOC. The parsonage tract sold for $28,500.00 and a considerable amount of the monies received were invested by ECOC back into the Springfield church building.

Although the plaintiffs made allegations of conspiracy, fraud and duress, and also failure of consideration, the Chancery Court declared the rescission should occur because of a failure of consideration.

In his memorandum opinion, the Chancellor stated as follows: "The Springfield congregation believed it would get a quality minister if they transferred their property and joined the Emmanuel Churches of Christ. What the congregation received was Mr. Randy Teat who led the congregation in its withdrawal. Thus, the consideration failed." The court stated in the transfer of property by a religious body consideration can be the purpose for that transfer between the religious entities. The court found that when the purpose of the transfer, namely, gaining a pastor, failed, then the transfer became subject to recission.

We are of the opinion that sufficient and adequate consideration existed for the transfer of the property. We are of the opinion that the trial court erred in holding that there was a failure of consideration for the transfer of this property.

Due to our determination that sufficient and adequate consideration existed for the transfer of the property and that there was not a failure of said consideration, we pretermit appellant's remaining constitutional issues relating to religion. These issues are as follows:

Did the Lower Court's decision violate the Appellant's First Amendment Right under the Constitution of the United States concerning freedom of religion?

Did the action of the Lower Court violate the Appellant's right under Article 1, Section 3 of the Constitution of Tennessee concerning Freedom of Worship?

Did the action of the Court in allowing the Appellees to have standing as members and trustees of the Christian Fellowship Ministries, a claimed successor of the Springfield Pentecostal Church, not as successors to the grantor (First Apostolic Church) violate Article 1, Section 3 of the Constitution of Tennessee by granting preference to one religious establishment or mode of worship over another?

The appellee has raised the following issue: "Did the trial court correctly order

the plaintiffs' to pay defendant's attorney's fees."

In its memorandum, the Chancery Court stated "[t]his Court declares a rescission in this case; but specifically provides that the Emmanuel Churches of Christ and Mr. Rob Roy Banks shall not suffer economic loss by this transfer," and later granted a judgment to Rob Roy Banks against the plaintiff for $1,300.00 and granted a judgment to ECOC's attorney William E. Farmer, for $11,588.55. In light of our decision to reverse the Chancery Court's rescission of the deed in question, the awards to Mr. Rob Roy Banks and to ECOC's attorney must also be reversed in order to restore the parties to their positions prior to the Chancery Court decision.

It therefore results that the Chancery Court's judgment divesting title to the property out of ECOC and vesting title in plaintiffs and the judgments against plaintiffs in the amount of $1,300.00 in favor of Rob Roy Banks and in the amount of $11,588.55 in favor of William E. Farmer, attorney for ECOC, are reversed and this case is remanded to the trial court for the collection of costs which are assessed to the appellee, and for further necessary proceedings in conformity with this opinion.

CANTRELL and KOCH, JJ., concur.