IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

_____

RAYMOND GREGORY,

    Plaintiff-Appellant,

Vs.

    Lincoln Chancery No. 9645
    C.A. No. 01A019508CH00357

LAURA SUE GREGORY,

    Defendant-Appellee.

_____

FROM THE LINCOLN COUNTY CHANCERY COURT

THE HONORABLE TYRUS H. COBB, CHANCELLOR


Jack B. Henry of Pulaski
For Appellant

James S. Kidd and James B. Cox of Fayetteville
For Appellee


*AFFIRMED IN PART AS MODIFIED, REVERSED
IN PART AND REMANDED*

Opinion filed:



**FILED**

**February 7, 1996**

**Cecil W. Crowson
Appellate Court Clerk**

W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.


CONCUR:

DAVID R. FARMER, JUDGE

WILLIAM H. WILLIAMS, SENIOR JUDGE

This appeal involves a suit to determine ownership of an 18.5 acre tract of land located in Lincoln County, Tennessee. The facts are as follows.

The original tract of land consisted of 15.5 acres which was owned by Samuel and Jane Gregory, the grandparents of plaintiff, who acquired the property by deed dated July 30, 1889. Following the deaths of Jane and Samuel Gregory in 1902 and 1906, respectively, the land was inherited by their children, Samuel Jr., George, E.T., Henry (the father of plaintiff), Mary Ellen, and Mary Lizzie. The children inherited the land as tenants in common, each child possessing a one-sixth undivided interest in the land.

At some point after they inherited the land, the children of Samuel and Jane orally agreed that they would treat the land as six individual tracts. Sometime thereafter each child built a house, maintained a garden, and raised livestock on his or her individual tract. Some of the children fenced off their individual tracts. In 1928, the children had the land surveyed and drawn into six individual tracts on the surveyor's map, but no boundary lines were established nor were any deeds drawn as a result of this survey.

On May 20, 1929, Mary Lizzie Gregory sold her one-sixth interest to her brother Henry, thereby giving Henry a two-sixths interest in the land. In 1943, the plaintiff, Raymond Gregory, the son of Henry Gregory and grandson of Samuel and Jane Gregory, moved off the parcel of his father, to Chicago where he currently resides. In 1952 Samuel Gregory, Jr., died leaving issue. In 1953 Mary Lizzie (then Smith) died leaving issue. In 1954 Mary Ellen died leaving issue. In 1955 George Gregory died without issue, and at some point prior to his death, George had purchased an additional 3 acres of land adjacent to the original 15.5 acres. In 1959 E.T. Gregory died leaving a surviving spouse, Estella Gregory. The will of E.T. Gregory, which was admitted to probate on February 18, 1965, devised his interest in the "tract of land of about two and one-half acres . . . received . . . in the division of the lands of . . . [his] father, Sam Gregory," to his wife Estella. In August of 1961, Henry Gregory died intestate leaving twelve

children, Sam Gregory, Odell Gregory, William S.T. Gregory, Otho L. Gregory, Lethel S. Gregory, Raymond Gregory (plaintiff-appellant), Ernest Gregory, Mary G. Fearn, Joe G. Campbell, Sernetta G. Lane, Corine G. March, and Terea Gregory. On August 19, 1961, eleven of the children of Henry Gregory executed a deed to the twelfth, Terea Gregory, which granted Terea "5.5 acres, more or less," such parcel of land "being the same real estate conveyed unto George Gregory by various deeds and owned by him at the time of his death, October 30, 1955, and thereafter his brother, Henry Gregory, held possession of said property adversely under fence paying all real estate taxes, until his death, August 15, 1961, and upon his death his rights in said real estate descended to us the undersigned as his children and only heirs at law and our sister, the grantee herein named."[1] The warranty deed from the children of Henry Gregory to Terea Gregory was recorded in the Lincoln County Register's Office on August 22, 1961. Sometime in 1961, Odell Gregory took possession of the entire 18.5 acre tract and began to farm and graze the land. Odell did not share the profits he received from these activities with any of the heirs of Samuel and Jane Gregory.

On March 9, 1965, approximately six years after the death of E.T. Gregory, E.T.'s wife, Estella (then Buchanan), sold to Odell Gregory, "the same real estate that was devised unto the undersigned as Estella Gregory by the last will and testament of the said E.T. Gregory . . . ." The warranty deed from Estella Buchanan to Odell Gregory was recorded in the Lincoln County Register's Office on March 22, 1965.

On September 10, 1965, Terea Gregory (then McNeil) executed a warranty deed to her brother Odell Gregory and defendant Laura Sue Gregory, whereby she sold Odell and defendant "approximately 5 acres, more or less,

---

[1]Neither the briefs nor the record disclose whether Henry Gregory did in fact adversely possess George Gregory's tracts, but since neither party has raised this as an issue, we will assume that Henry held legal title to George's tracts at Henry's death.

and being the same real estate conveyed unto the undersigned as Terea M. Gregory by deed of Sam Gregory, et al, dated August 19, 1961, and recorded in the Register's Office of Lincoln County, Tennessee . . . ." The deed from Terea Gregory McNeil to Odell Gregory was recorded in the Lincoln County Register's Office on September 20, 1965.

In 1986 Odell Gregory died leaving a surviving spouse, defendant Laura Sue Gregory, and issue. The will of Odell Gregory left his entire interest in all of his property, whether real or personal, to his wife, defendant Laura Sue Gregory. Following the death of her husband Odell, defendant continued to rent and/or farm the 18.5 acre tract. She did not share the profits she received from these activities with any of the heirs of Samuel and Jane Gregory.

On September 11, 1992, plaintiff Raymond Gregory filed this suit in the Chancery Court for Lincoln County seeking to quiet title to the 18.5 acre tract of land.[2] Raymond Gregory filed the suit individually and as a member of a class consisting of the known and unknown heirs of Samuel and Jane Gregory. The plaintiff sought certification of the suit as a class action, but the trial court refused to entertain the suit as a class action. The complaint alleges that the plaintiff and the other heirs of Samuel and Jane Gregory, hold title to the 18.5 acres as tenants in common. The complaint also asserts that the deed from the children of Henry Gregory to Terea Gregory was fraudulent, and that therefore, the deed from Terea Gregory to Odell Gregory was invalid, because it was based upon the fraudulent deed. The complaint also asserts that the deed from Estella Buchanan to Odell Gregory is invalid, because Estella Buchanan never had title to the property.

On December 2, 1992, the answer of defendant Laura Sue Gregory, the

_____

[2]The complaint does not specifically state that the plaintiff seeks relief based upon an 18.5 acre tract, however, both sides introduced proof at trial by which they each sought relief based upon an 18.5 acre tract of land. Accordingly, under Tenn.R.Civ.P. 15.02, the complaint will be considered to be implicitly amended to seek relief based upon an 18.5 acre tract.

wife of Odell Gregory and sister-in-law of plaintiff Raymond Gregory, was filed. The answer denied the material allegations of the complaint, and additionally asserted the defense of laches to the allegations of the complaint. The defendant also asserted a counterclaim to the 18.5 acres based on adverse possession under T.C.A § 28-2-101 (1980), and the common law doctrine of prescription. The answer and counterclaim aver that the defendant is the owner of the entire 18.5 acre tract based upon the defendant's continuous and exclusive possession of the property under fence, and the fact that defendant and her husband have paid all taxes on the 18.5 acre tract since 1961.

On January 12, 1993, the trial court entered an order appointing a guardian ad litem to represent the unknown heirs of Samuel and Jane Gregory. On November 29, 1994, the case was tried before the chancellor sitting without a jury. On March 13, 1995, the chancellor filed an order and a memorandum opinion finding for the defendant. The chancellor found that the defendant took title to 7.5 acres of the land by virtue of adverse possession under color of title. The chancellor also found that the defendant took title to the remaining 8 acres[3] by virtue of prescription, because the defendant openly, notoriously, adversely, and exclusively possessed the land for a period of more than twenty years. The court further found that the doctrine of laches barred the plaintiff from asserting his claims of fraud in the underlying deeds. In addition, the chancellor assessed the costs of the action, including a $1000 guardian ad litem fee, against the defendant.

On April 10, 1995, the plaintiff filed his Notice of Appeal. The plaintiff presents six issues for our review. As stated in his brief, those issues are:

> 1. Did the Chancellor err in holding that there was a parol partition of the land of Samuel and Jane Gregory.
>
> 2. Did the Court err in holding that a parol partition is

---

[3]The chancellor only ruled on 15.5 (rather than 18.5) acres of the property. This was error since the parties seek relief based upon an 18.5 acre tract.

binding in this case.

3.  Did the Court err in finding that the Plaintiffs were guilty of laches

4.  Did the Court err in finding that the title was vested in the Defendants by reason of having had open, notorious, adverse, and exclusive possession in excess for (sic) (20) twenty years.

5.  Did the Court err in holding that each of the children of Samuel Gregory, divided the property into 2.5 acre tracts and took possession into control (sic) of their own individual tract.

6.  Did the court err in holding that the letter from Odell Gregory to Terra (sic) Vines was not an admission that the deeds were fraudent (sic).

In addition to the above issues, the defendant-appellee presents one additional issue for our review. As stated in her brief, that issue is:

Whether the trial court erred in assessing the costs of the action below against the defendant?

### I. Parol Partition of the Land

We will first address appellant's first, second, and fifth issues regarding the parol partition of the land. The plaintiff argues that the evidence preponderates against the trial court's finding that following the death of Samuel and Jane Gregory, their children orally partitioned the land which the children held as tenants in common. We disagree.

Under Tennessee law, parol partition followed by possession is binding and enforceable. *Martin v. Taylor*, 521 S.W.2d 581 (Tenn. 1975). A parol partition of land is not a sale of land, and therefore, does not contravene the Statute of Frauds. *Meacham v. Meacham*, 91 Tenn. 532, 19 S.W. 757 (1892). In determining whether a parol partition vests each individual partitioner with fee simple absolute title in the partitioner's individual tract following partition, a court should consider whether each individual takes possession of the tract and performs acts evidencing absolute ownership over that part allotted to him or her. *See Martin v. Taylor*, 521 S.W.2d 581 (Tenn. 1975).

At trial, plaintiff Raymond Gregory testified that following the deaths of

6

Samuel and Jane Gregory, their children, E.T., Samuel Jr., Marry Lizzie, Mary Ellen, George, and Henry orally divided the 15.5 acre tract of land which they inherited from their parents as tenants in common. The plaintiff testified that "they would say by word of mouth, '[t]his is my area right here.'" The plaintiff testified that "each one had his . . . [tract], and they fenced off some areas there, in a couple of places." Mr. Gregory further testified that each of the children built a house, grew crops, and maintained livestock on the property within their individual tracts. During Raymond Gregory's direct examination, the trial court specifically asked him:

> Q. As I understand it, just among them each one picked out roughly what they thought would be their two and a half acres and took that over and treated it as theirs.

> WITNESS: Yes, sir.

On cross-examination, Mr. Gregory was asked how the land was "divided up" when he moved to Chicago in 1943. He responded, that the land was divided according to "the amount of land these brothers and sisters lived on . . . ."

The trial court found that the children of Samuel and Jane Gregory orally partitioned the 15.5 acres which they held as tenants in common following the deaths of Samuel and Jane Gregory. The trial court further found that once the children partitioned the land, each child performed acts of absolute ownership over his or her individual tract. The court noted that the derivation clause in the will of E.T. Gregory supported the court's finding that there had been a parol partition of the land. In the will, E.T. Gregory devised unto his wife, Estella Gregory, "the house and tract of land of about two and one-half acres, where we now reside, which tract of land is on the Providence Road in the 7th Civil District of Lincoln County, Tennessee, and was received by me about sixty-five years ago in the division of the lands of my father, Sam Gregory, deceased." Based upon the will and the testimony at trial, the trial court found that each of the six children of Samuel and Jane Gregory owned approximately a 2.5 acre

tract of land in fee simple absolute.[4] The evidence does not preponderate against this finding.

## II. Fraud in the Underlying Deeds

We next consider appellant's issue number six, "Did the Court err in holding that the letter from Odell Gregory to Terra (sic) Vines was not an admission that the deeds were fraudulent." The plaintiff argues that the trial court erred in holding that defendant owns 7.5 acres of the land by virtue of adverse possession, because the deeds which conveyed this 7.5 acres to the defendant (and under which the defendant claims color of title) were either invalid or fraudulent, and the defendant and/or her husband, Odell Gregory, were aware of this invalidity and fraud. In forwarding this argument the plaintiff complains of three deeds.

A. The Deed from the Children of Henry Gregory to Their Sister, Terea Gregory.

The plaintiff first complains of the deed from the children of Henry Gregory to Terea Gregory, arguing that the deed was either procured by fraud and/or surrounded by fraud in its execution. As stated above, Henry Gregory died on August 15, 1961. On August 19, 1961, the children of Henry Gregory conveyed by deed "5.5 acres, more or less" of the land in dispute to Terea Gregory. The land conveyed was apparently the same land which was originally owned by Henry's brother, George, and apparently consisted of George's individual 2.583 acre tract, and 3 acres of land which was adjacent to the original 15.5 acres.[5] The deed which conveyed the 5.583 acres recites that Henry acquired title to George's land by adverse possession. The deed also states that Henry's children acquired title to the land by virtue of being Henry's heirs at law. The text of the deed reads in pertinent part:

_____

[4]Each of the children actually owned 2.583 acres of land.

[5]George purchased the three acres sometime after he and his siblings partitioned the original 15.5 acres.

FOR AND IN CONSIDERATION of the love and affection which we the undersigned have and entertain for our sister, Terea M. Gregory, we the undersigned Sam Gregory, Odell Gregory, William S.T. Gregory, Otho L. Gregory, Lethel S. Gregory, Raymond Gregory, Ernest Gregory, Mary G. Fearn, Joe G. Campbell, Sernetta G. Lane, and Corine G. March have bargained and sold and do hereby transfer and convey unto the said Terea M. Gregory the following described lot or parcel of land lying and being in the 7th Civil District of Lincoln County, Tennessee, bounded and described as follows:
Bounded on the north by Providence Road; bounded on the east by Gregory Heirs; bounded on the south by Sarah D. Posey; containing 5.5 acres, more or less, and bounded on the west by Sam Bagley, /and being the same real estate conveyed unto George Gregory by various deeds and owned by him at the time of his death, October 30, 1955, and thereafter his brother, Henry Gregory, held possession of said property adversely under fence paying all real estate taxes, until his death, August 15, 1961, and upon his death his rights in said real estate descended to us the undersigned as his children and only heirs at law and our sister, the grantee herein named.

The deed was filed in the Lincoln County Register's Office on August 22, 1961. All of the signatures of the named grantors appear in the signature block, and the deed contains the certification of a notary public. The plaintiff admits that he and the other children signed a deed to Terea which contained the same language as the deed dated August 19, 1961, but he asserts that the deed he signed only granted Terea three acres of land and did not contain the certification of a notary public. Mr. Gregory also testified that neither he nor his siblings ever intended the "grant" of the land to Terea to vest her with ownership of the land.[6] He maintains that the deed which he signed was on a yellow piece of paper, and was not signed in the presence of a notary public.[7] I n support of this argument the plaintiff introduced a letter which he alleges was written by Odell Gregory to Terea Gregory. The letter contains the business

[6]Mr. Gregory stated, "It was just giving her permission to stay on the land. It [the land] wasn't ours to give. "

[7]The deed in the record which is apparently the one which appears on the books in the register's office is typed on white legal size paper.

9

letterhead of Odell and his partner in the funeral home business, George Howard. The plaintiff argues that the letter is evidence that the deed from him and his siblings to Terea which appears "on the books" is a fraud, because the letter states that the plaintiff's brother Sam never signed the deed or acknowledged his signature in the presence of a notary public. The plaintiff argues that the letter is strong evidence of fraud, especially in light of the fact that the notary who acknowledged the signatures was George Howard, Odell's partner in the funeral home business. The letter is dated September 7, 1961, and reads in pertinent part:

> Dear Sister Terea;
>
> * * *
>
> Sam says he didnt Sign the Deed transfer, and this is where I had to work fast to Save Putt [George Howard] because he stamped his Seal on this document.
>
> If he were to push this case and prove that he did'nt Sign, Putt Howard could get some time in confinement. I got Sam to Agree that it was Alwright with him for you to have the little tract of land. And thats that. Terea you see each of us were suppose to sign our names in the presence of the Notary, But being a partner of his he stuck his neck out trusting the honesty of us. Dont you write Sam Anything concerning this just leave it to me, and I'll settle all of it.
>
> * * *
>
> Your Bro,
> Odell Gregory

At trial the defendant objected to the letter on the basis that it was hearsay not falling within any exception. The trial court admitted the letter under Tenn.R.Evid. 804(b)(3)[8] finding that the statement was against the interest

---

[8]Tenn.R.Evid. 804(b)(3) provides:

> Rule 804(b). Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> * * *
>
> (b)(3). Statement Against Interest. A statement which

of Odell Gregory, because the statement, if made public, could result in George Howard being subjected to criminal penalties. The court found that because George Howard was a business partner of Odell Gregory, any criminal action against Howard could affect Odell's business interests. Therefore, the statement was against the pecuniary interest of Odell Gregory.

Defendant states in her brief that the chancellor erred in admitting the letter into evidence, but makes no argument as required by T.R.A.P. 27(a)(7). Accordingly, we consider this issue waived. *See Wilhite v. Brownsville Concrete Co., Inc.*, 798 S.W.2d 772, 775 (Tenn.App. 1990).

Terea Gregory, the grantee of the 5.583 acres in the deed from her siblings, also testified at trial regarding the circumstances surrounding the execution of the deed from her siblings. Terea testified that at her father Henry's funeral, Odell approached her with a document on legal size paper and told her that he and the other siblings were going to place "Uncle George's property" in her name, because she had given her father Henry "support." Ms. Gregory testified that the deed which appears in the Lincoln County Register's Office was not the document which her brothers and sisters signed. Ms. Gregory also testified that the deed which her brothers and sisters signed was "on a legal pad" and had no notary certification. Ms. Gregory further stated that at the time she saw the deed, three of her brothers and sisters had not signed the deed, but she also admitted that it was possible that her brother Odell had obtained these signatures between the time she last saw the deed and the filing of the deed. In her testimony at trial, Ms. Gregory never specifically stated whether the deed she originally saw granted her 3 or approximately 5.5 acres. She simply stated

---

was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

11

that the deed granted her "Uncle George's property."

B. The Deed from Terea Gregory to her Brother Odell Gregory and Defendant Laura Sue Gregory

The second deed which the plaintiff asserts is fraudulent is the deed from Terea Gregory to Odell and his wife, defendant Laura Sue Gregory. In this warranty deed, dated September 10, 1965, Terea sold the land that was conveyed to her by the August 19, 1961, deed from her brothers and sisters, to her brother Odell and the defendant for the sum of $300.000 The deed states in pertinent part:

> FOR AND IN CONSIDERATION of the sum of THREE HUNDRED ($300.00) DOLLARS this day cash in hand paid, receipt of which is hereby acknowledged, I, the undersigned Terea Gregory McNeil, have bargained and sold and do hereby transfer and convey unto Odell Gregory and wife, Laura Sue Gregory, the following described real estate lying and being in the 7th Civil District of Lincoln County, Tennessee, bounded and described as follows:
> Bounded on the North by Providence Road; on the South by Mrs. Sara Douglas Posey; on the West by Sam S. Bagley; and on the East by Odell Gregory, containing approximately 5 acres, more or less, and being the same real estate conveyed unto the undersigned as Terea M. Gregory by deed of Sam Gregory, et al, dated August 19, 1961, and recorded in the Register's Office of Lincoln County, Tennessee, in Deed Book "E-7", page 289, to which deed reference is here had for particulars.

The deed is signed by Terea and contains the acknowledgement of a notary public. This deed was filed in the Lincoln County Register's Office on September 20, 1965. At trial Terea Gregory testified that she sold this property to Odell because she was getting married and moving away. She stated that the signature on the deed was in fact hers, but Odell failed to ever pay her the $300.00.

C. The Deed from Estella Buchanan to Odell Gregory.

The last deed which the plaintiff complains of is a warranty deed from Estella Buchanan, the wife of E.T. Gregory, to Odell Gregory in which Estella

Buchanan sold her husband E.T.'s 2.583 acre tract of land to Odell for the sum of $410.00. The deed is dated March 9, 1965, and describes the land as "being the same real estate that was devised unto the undersigned as Estella Gregory by the last will and testament of the said E.T. Gregory, deceased, which is to be found of record in the Office of the County Court Clerk of Lincoln County, Tennessee, in Will Book 10 [penciled in], page 334 [penciled in], to which reference is here had for particulars." The deed is dated March 9, 1965, and contains the signature of Estella Buchanan and the acknowledgement of a notary public.

The plaintiff asserts that the deed from Estella Buchanan to Odell Gregory is invalid, because Estella Buchanan never owned the property, and therefore, could not deed the property to Odell. The plaintiff argues that E.T. Gregory's will never vested Estella Buchanan with title to the property, because E.T. did not own the 2.583 acres. Plaintiff contends that the 2.583 acres was simply part of the original 15.5 acres which was held by all the heirs of Samuel and Jane Gregory as tenants in common.

The trial court made no finding as to whether the August 19, 1961, deed from the children of Henry Gregory to Terea Gregory was fraudulent, the court simply ruled that the plaintiff was barred from asserting fraud by virtue of laches and did not elaborate further. Because we find that the plaintiff failed to prove fraud in the August 19, 1961 deed (or any other deed), we do not reach the laches issues.

It is well settled that to set aside a deed, the proof must be clear, cogent, and convincing. *Myers v. Myers*, 891 S.W.2d 216, 219 (Tenn.App. 1994); *Pugh v. Burton*, 25 Tenn.App. 614, 166 S.W.2d 624, 627 (1942). In this case the plaintiff's proof simply fails to clearly, cogently, and convincingly prove fraud in the deed from him and his siblings to Terea Gregory. The only evidence that the deed contained in the Lincoln County land records was not the original deed signed by the children of Henry Gregory, was the testimony of the plaintiff and the

13

plaintiff's witness, Terea Gregory. In many instances Terea's testimony failed to corroborate the plaintiff's testimony. The plaintiff testified that the deed he signed only contained a grant of 3 acres to Terea. However, Terea's testimony and her deed to Odell in which she sold him "approximately 5 acres," indicate that the deed to her from her siblings did in fact convey "5.5 acres, more or less." In addition, while Terea testified that not all of her brothers and sisters signed the deed, the plaintiff seemed to believe that all of them had signed the deed, although not in the presence of a notary. Finally, even if we assume that the letter which plaintiff introduced was in fact written by Odell Gregory, the letter establishes at most, that Odell simply had heard that Sam Gregory had not signed the deed; it does not establish that the deed was in fact not signed by Sam Gregory.

With respect to the deed from Terea Gregory to Odell and Laura Sue Gregory, which is dated September 10, 1965, the trial court also did not make any finding as to whether the deed was procured by fraud or whether the deed should be set aside due to any other fraud surrounding the deed. Not only has the plaintiff failed to produce clear, cogent, and convincing evidence of fraud surrounding this deed, the plaintiff has failed to produce any evidence of fraud whatsoever. This argument is without merit.

In summary, the deeds from the children of Henry Gregory to Terea Gregory, and from Terea Gregory to Odell and defendant Laura Sue Gregory, vested Odell and defendant with whatever title that Henry Gregory had to the 5.583 acres that was originally owned by George Gregory. Upon Odell's death his will vested defendant with title to all of his property, both real and personal, thus, by virtue of Odell's will, defendant holds title to this 5.583 acres. The trial court ruled that the deeds in conjunction with the defendant's possession of the land, conveyed title to 5 acres of the land by virtue of adverse possession. This ruling is modified to vest defendant with title to 5.583 acres of the land by virtue of the deeds and the will of Odell Gregory.

Finally the plaintiff's argument that the deed from Estella Buchanan to Odell Gregory is invalid because Estella Buchanan never owned the property, is without merit. The argument is without merit based upon our holding that the children of Samuel and Jane Gregory orally partitioned and took possession of the land in dispute, thereby vesting the children with a fee simple absolute title in their individual 2.583 acre tracts. Since E.T. Gregory held title in fee simple absolute to his tract he was free to devise the tract to his wife Estella at his death. *Myers v. Myers*, 891 S.W.2d 216, 220 (Tenn.App. 1994)("[T]he power of alienation is necessarily incident to every estate in fee.) Likewise, Estella was free to sell this tract to Odell Gregory. Since Odell Gregory's will devised all his real and personal property to his wife, defendant Laura Sue Gregory, the effect of Odell's will was to vest title to this 2.583 acre tract of land in the defendant. The trial court ruled that defendant took title to this tract by adverse possession. This ruling is modified to vest the defendant with title to this tract by virtue of the deed from Estella Buchanan to Odell Gregory and the will of Odell Gregory.

III. Defendant's Adverse Possession and Prescription Claims

Since we have determined that the defendant holds title to 8.166 acres of the land in dispute, we next address the issue of whether the trial court erred in ruling that the defendant holds title to the remainder of the 18.5 acres by virtue of prescription.

At trial, Raymond Gregory testified that following the death of Henry Gregory in 1961, Odell Gregory exclusively possessed the entire 18.5 acre tract of land until Odell died in 1986. Raymond also testified that after 1986 defendant continued to exclusively possess the land. Raymond testified that Odell informed him sometime in 1966 that he (Odell) was going to use the land, and that Odell used the property "as he pleased." Raymond further testified that Odell paid all the taxes on the land, farmed the land, raised cattle on the land, and rented the land, and that he never asked Odell for (or received) any of the profits produced from Odell's activities on the land. The record indicates that

15

defendant continued to rent and farm the land after Odell's death in 1986.

The plaintiff also testified that prior to 1966, he attempted to pay the taxes on the land on two separate occasions since he was uncertain whether the land taxes were being paid, and that both times his tax payments were returned, because the taxes had already been paid by Odell. Mr. Gregory testified that he became aware that the land "was not our land any more" about six or seven years prior to filing suit in 1992. The trial court ruled that the defendant should be awarded title to 8 acres of the land by virtue of the common law doctrine of prescription, because the defendant and her husband, Odell Gregory, had continuously, exclusively, notoriously, and adversely possessed these 8 acres for more than 20 years.

Title under the common law doctrine of prescription does not require even color of title. *Hallmark v. Tidwell*, 849 S.W.2d 787, 793 (Tenn. App. 1992) (citing *Freeman v. Martin Robowask, Inc.*, 61 Tenn.App. 677, 457 S.W.2d 606 (1970)). To receive title under the common law doctrine of prescription, the prescriptive holder must have been in exclusive, uninterrupted, notorious, and adverse possession of the land in question for a period of more than 20 years. *Hallmark*, 849 S.W.2d at 793. Where from long possession the presumption of a grant to complainants arises, it is not necessary that they show title by paper writings, uninterrupted possession for 20 years being sufficient to evidence title and seizin in fee. *Id.* at 792-93 (Citing *Keel v. Sutton*, 142 Tenn. 341, 219 S.W. 351 (1920)). The presumption that a prescriptive holder has title to land may be rebutted by showing that the prescriptive holder was merely using the land with the permission of the actual owner. *Drewery v. Nelms*, 132 Tenn. 254, 177 S.W. 946 (1915).

The testimony of the plaintiff, Raymond Gregory, indicates that the defendant has had exclusive, uninterrupted, and notorious possession of the entire 18.5 acres since Henry Gregory died in 1961. The only element of prescription which the defendant disputes is that of adverse or hostile

16

possession. Raymond Gregory testified that although Odell made whatever use of the property he (Odell) desired from 1961 until his death in 1986, Raymond never thought that Odell was doing anything other than "just renting or using the property" based upon an "understanding" which he and Odell had regarding the payment of taxes on the land. Raymond argues that notwithstanding the control which Odell and the defendant Laura Sue exercised over the property, Odell and Laura Sue's possession should not be considered adverse (at least until not Odell's death in 1986), because he understood that Odell could graze the land and rent the land in exchange for Odell's payment of the taxes on the land. Plaintiff argues that until shortly after Odell's death, plaintiff assumed that Odell and defendant were simply using the land with the plaintiff's and the other siblings' permission. In support of this argument, plaintiff introduced into evidence a letter dated February 13, 1962, written to plaintiff from his brother Odell in which Odell states:

> Dear Bro Raymond;
>
> * * *
>
> The Land taxes were $8.32 which is a little cheaper than they were last year. Terea's taxes on Uncle George's track was $2.77
> I pd. the taxes on both tracks just to be Sure they were pd. Of Course Terea will reemburse on her's. Now On this 8.32 I am not Asking Anybody to help me pay them, because I am going to try to grow enough out there to get my money back, and its left up to you as to whether you pay any of this tax. Give My Love to all the family, And We Are All doing Very Well.
>
> Your Bro,
> Odell Gregory

The plaintiff argues that the above letter establishes that the plaintiff and Odell Gregory had an agreement in which Odell would pay the taxes on the land in exchange for farming the land, and therefore, Odell's use of the land was not adverse to the interests of plaintiff and the other children of Samuel and Jane Gregory and their respective heirs. We agree.

We think the above quoted letter was sufficient to lead the plaintiff to

17

believe that Odell's possession of the land was not adverse to the interests of plaintiff and the other children of Samuel and Jane Gregory and their respective heirs. The defendant asserts that her and her husband's possession of the land was adverse, and this fact was established by plaintiff's own testimony in which he stated that Odell "excluded" him from the property. The defendant also relies on a portion of the plaintiff's testimony in which he stated that he and Odell never had an agreement regarding the payment of the land taxes.

We find the defendant's reliance on these portions of the testimony to be unpersuasive. Although the plaintiff testified that he was "excluded" from the land, it is unclear from the testimony when the plaintiff was excluded as well as what form this "exclusion" took. With respect to the plaintiff's testimony stating that he and Odell never had an agreement regarding the taxes, the plaintiff was indicating that Odell unilaterally informed the plaintiff that he (Odell) was going to use the land for farming and in exchange pay the taxes on the land. When the plaintiff testified that he and Odell never had an agreement, he was indicating that he never specifically assented to Odell's use of the land. However, this testimony does not establish that Odell was using the land without Raymond's permission, nor does it change the character of Odell's letter to Raymond in which Odell stated that he would not ask anyone to share in the burden of the taxes, because he would recoup his tax payments from farming. Regardless of whether Raymond specifically assented to Odell's farming/grazing of the land (and therefore, did or did not specifically give Odell permission to use the land), we think Raymond could reasonably construe Odell's letter to mean that Odell's possession of the land was not adverse.

In summary, the defendant has failed in her burden of proving that her possession of the land was adverse to the interests of the plaintiff and the other children of Samuel and Jane Gregory and their respective heirs.

IV. Costs of the Action

Finally we reach the defendant's issue regarding the trial court's

18

assessment of the costs of the action against her. The court apparently reasoned that the defendant should pay the costs of the action, because the outcome of the litigation was to her benefit. The defendant argues that the costs of the action were unfairly assessed against her, because she did not initiate the action. She argues that in both civil and chancery suits, the successful party is entitled to the costs of the action unless otherwise directed by law or a court of record. She further argues that no compelling reason exists for diverging from the longstanding rule that the costs of an action are assessed against the losing party.

It is well settled that assessment of the costs of an action are within the discretion of the trial court. *In Re Webb*, 675 S.W.2d 176 (Tenn.App. 1984). However, in view of our decision, the costs should be assessed equally against all parties.

Accordingly the judgment of the trial court awarding 7.5 acres to the defendant by virtue of adverse possession is modified to award the defendant 8.166 acres by virtue of the will of Odell Gregory and the deeds from Estella Buchanan and Terea Gregory. The judgment of the trial court awarding the remaining property to the defendant is reversed, and the case is remanded to the trial court for a determination of the respective interests in the property. Costs in the trial court and costs on appeal are assessed equally against the parties.

_____
W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:

_____
DAVID R. FARMER, JUDGE

_____
WILLIAM H. WILLIAMS,
SENIOR JUDGE